Alexander Kolodin (SBN 030826)
Roger Strassburg (SBN 016314)
Veronica Lucero (SBN 030292)
Arno Naeckel (SBN 026158)
**The Davillier Law Group, LLC**
4105 North 20th Street
Suite 110
Phoenix, AZ 85016
602-730-2985
Email: akolodin@davillierlawgroup.com
       rstrassburg@davillierlawgroup.com
       vlucero@davillierlawgroup.com
       anaeckel@davillierlawgroup.com
       phxadmin@davillierlawgroup.com (file copies)

Laurin Mills (*pro hac vice* to be submitted)
**Samek | Werther | Mills, LLC**
2000 Duke Street
Suite 300
Alexandria, VA 22314
703-547-4693
Email: laurin@samek-law.com

*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA, PRESCOTT DIVISION

| | |
|---|---|
| Dr. Michael P. Ward, D.O. and Dr. Kelli Ward, D.O., husband and wife; and Mole Medical Services, P.C., an Arizona Professional Corporation;<br><br>    Plaintiffs,<br><br>v.<br><br>Bennie G. Thompson, in his official capacity as Chairman of the House Select Committee to Investigate the January 6th Attack on the United States Capitol; Select Committee to Investigate the January 6th Attack on the | Case No.:<br><br>**Complaint**<br><br>**(Jury trial demanded)** |

- 1 -

United States Capitol, a committee of the United States House of Representatives; T-Mobile USA, Inc., a Delaware Corporation;

Defendants.

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs Dr. Michael P. Ward, D.O., Dr. Kelli Ward, D.O., and Mole Medical Services, P.C., by and through their attorneys, the Davillier Law Group, LLC and Samek | Werther | Mills, LLC, bring this action against Defendants, Chairman Bennie G. Thompson, The Select Committee to Investigate the January 6th Attack on the United States Capitol, and T-Mobile USA, Inc., and allege as follows:

## INTRODUCTION

1. On or around January 25, 2022, Mole Medical received a letter dated January 24, 2022, from the T-Mobile Legal and Emergency Response Team stating that T-Mobile had received a subpoena *duces tecum* from the United States House of Representatives Select Committee to Investigate the January 6th Attack on the United States Capitol. (Exhibit A, Letter from T-Mobile and attached subpoena).

2. The January 19, 2022 Subpoena *Duces Tecum* by the House of Representatives of the Congress of the United States of America to T-Mobile Before the Select Committee to Investigate the January 6th Attack on the United States Capitol (the "Subpoena") (Exhibit A) called for the production of certain documents covering a date range from November 1, 2020 to January 31, 2021 by the deadline of February 4, 2022. This subpoena specifically requested certain information related to the lines associated with the T-Mobile account ending 4220 assigned to Mole Medical by T-Mobile (the "Phone Number") including the records of incoming and outgoing calls, their durations and associated phone numbers, and information about the callers commonly called "metadata," or call data records.

3. Although the Phone Number is referred to in the singular, there are four separate numbers associated with the account. (Exhibit B, Declaration of Kelli Ward) ¶ 17.

4. The production of these documents by T-Mobile concerning the Phone Number, and the Subpoena upon which this production would be based, violate the constitutional rights of the Plaintiffs, specifically implicating the protections of the First and Fourteenth Amendments to the United States Constitution; constitute an *ultra vires* action by the Committee in violation of its own Rules, the rules of the House of Representatives of the United States Congress, and the fundamental basis underlying the limited congressional power to investigate for legislative purposes; violate state and federal privileges of medical privacy and physician-client communications; and substantially infringe the right to privacy guaranteed under Arizona state law by invading the Plaintiffs' seclusion.

5. For these reasons, and as further articulated below, Plaintiffs respectfully ask that this Court declare that the Subpoena is a violation of the Plaintiffs' constitutional rights, an overbroad overreach of congressional power for improper purposes, and that this Court quash it, while enjoining Defendants from enforcing the Subpoena or producing any documents in compliance with its demands.

**PARTIES**

6. **Plaintiff Dr. Michael P. Ward, D.O.** ("Michael Ward") is a practicing Doctor of Osteopathic Medicine who serves as medical director for an air ambulance company and actively practices emergency medicine in the State of Arizona, mostly in and around Lake Havasu City. Declaration of Michael Ward ¶¶ 5-7 (Exh. C). He is an active member of the Republican party and resides in Lake Havasu City, where he and his wife Dr. Kelli Ward own a home. *Id*. ¶ 2. Lake Havasu City is located in Mohave County, Arizona.

7. **Plaintiff Dr. Kelli Ward, D.O.** ("Kelli Ward"; collectively with Michael Ward "the Wards") is a practicing Doctor of Osteopathic Medicine. Declaration of Kelli Ward ¶¶ 4-5, 9-16.  She is also an active member of the Republican Party, having served as State Senator in the Arizona State Senate from 2012 to 2015, and currently sits as Chair of the Arizona Republican Party. *Id.* ¶ 8. She resides in Lake Havasu City, Arizona. *Id.* ¶ 2.

8. **Plaintiff Mole Medical Services, PC** ("Mole Medical") is an Arizona Professional Corporation doing business in Mohave County, Arizona. Declaration of Michael Ward ¶ 7.

9. **Defendant Bennie G. Thompson** ("Chairman Thompson") is the U.S. Representative for Mississippi's 2nd District and the Chairman of the House Select Committee to Investigate the January 6 Attack on the United States Capitol. He is a member of the Democratic Party. Chairman Thompson signed the subpoena in question and is sued in his official capacity.

10. **Defendant The Select Committee to Investigate the January 6th Attack on the United States Capitol** (the "Committee") is a committee created by House Resolution 503 passed by the United States House of Representatives of the 117th Congress on June 30, 2021.

11. **Defendant T-Mobile USA, Inc.** ("T-Mobile") is a Delaware corporation. Plaintiffs make no accusation of wrongdoing on the part of T-Mobile and they are named herein only insofar as is necessary to ensure that they will be bound by this Court's judgment.

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this case arises under the Constitution and laws of the United States, including U.S. Const. Amends. I, IV; 28 U.S.C. § 1367; and 28 U.S.C. §§ 2201-2202.

13. Venue is proper because the Wards and Mole Medical are domiciled in this District, no real property is involved in the action; and the Subpoena was served on T-Mobile to seek records of the Wards and Mole Medical, the majority of which were created in and inform concerns in this District. 28 U.S.C. § 1391.

## BACKGROUND AND GENERAL ALLEGATIONS

### *Michael Ward's Usage of the Phone Number*

14. As a Doctor of Osteopathic Medicine, Michael Ward treats patients in emergency departments in the State of Arizona, most in or around Lake Havasu City. Declaration of Michael Ward ¶ 7.

15. In certain circumstances, Michael Ward gives the Phone Number to patients to follow up on their questions, the status of their condition, and the state of the improvement of their health. *Id.* ¶ 8.

16. Michael Ward gives the Phone Number to patients on average several times in the course of a normal week. During the COVID pandemic, Michael Ward has typically given out the Phone Number more frequently so that he can answer additional questions about treatment, follow-up, and prescriptions. *Id.* ¶ 9.

17. Although he sees all his patients in Arizona, many of Dr. Michael Ward's patients have telephone numbers with out-of-state area codes. *Id.* ¶ 16.

18. Michael Ward also uses this line to consult with other physicians about patients and patient care. *Id.* ¶ 10.

19. Additionally, Michael Ward serves as medical director for an air ambulance company, and while "on call" with the company, the Phone Number serves as a point of contact for questions from emergency medical technicians and paramedics for medical advice about patients. *Id.* ¶ 11.

20.     Michael Ward also uses the Phone Number for calls with his daughter, sons, the girlfriend of one of his sons, and other family and friends, as well as individuals with whom he is in contact for political purposes. *Id.* ¶ 15.

### *Kelli Ward's Usage of the Phone Number*

21.     Since December 2019, Dr. Kelli Ward has practiced medicine exclusively in the field of medical weight loss. Declaration of Kelli Ward ¶ 5. The position of Chairwoman is unpaid, so treating medical weight loss patients allows her to maintain an income stream. She also derives meaning and satisfaction from her work outside of politics as a doctor. *Id.* ¶ 8.

22.     Since the COVID-19 pandemic began, Kelli Ward has seen patients almost exclusively via telemedicine. *Id.* ¶ 9.

23.     Kelli Ward uses a HIPAA-complaint videoconferencing system during patient telemedicine visits. However, sometimes Kelli Ward or her patients will have trouble with the system, in which case she will use the Phone Number to conduct the telemedicine visits. *Id.* ¶ 12.

24.     Kelli Ward uses the Phone Number to converse with her patients, as well as with family and friends, and for calls of a political nature. *Id.* ¶ 18.

25.     Upon information and belief, Kelli Ward's patients are all located in Arizona, although many have moved to the state and still maintain phone numbers with area codes associated with different states. *Id.* ¶ 15.

26.     For many of Kelli Ward's patients, the mere fact that they are seeing a doctor for medical weight loss is a sensitive issue, and some bring up other issues, including psychological problems, anxiety, depression, insomnia, diabetes, and eating disorders during their calls with Dr. Ward, all of which are intensely personal and private medical concerns. *Id.* ¶ 11.

### *The Nature of the Subpoena*

27. The Subpoena requires that T-Mobile produce certain documents associated with the Phone Number.

28. Among these documents, the Subpoena requires that T-Mobile provide "subscriber information," including all authorized users on the associated account, all phone numbers, SIM, IMSI, and other identifiers associated with the account, and the names and identifies of individuals associated with the account, including IP addresses. Exh. A, Section A, ¶ 1.

29. The Subpoena also requires T-Mobile produce "Connection Records, and Records of Session Times and Durations," specifically seeking

> All call, message (SMS & MMS), Internet Protocol ("IP"), and data-connection detail records associated with the Phone Numbers, including all phone numbers, IP addresses, or devices that communicated with the Phone Number via delivered and undelivered inbound, outbound, and routed calls, messages, voicemail, and data connections.

Exh. A, Section A, ¶ 2.

30. In particular, the Subpoena also requires that the electronic document productions preserve "metadata," which is data about data, identifying such features as the date of creation, modification, file sizes and extensions, authors, subjects, titles, message identifiers and headers, and internal file paths for all documents provided. Exh. A, Document Production Definitions and Instructions, ¶ 5, at b. This type of metadata is also known as "call data records." https://en.wikipedia.org/wiki/Call_detail_record#:~:text=A%20call%20detail%20record%20(CDR,through%20that%20facility%20or%20device (last accessed February 1, 2022). An analysis of call data records can reveal a large amount of personal information and social network contact information. Blondel, V.D., Decuyper, A. & Krings G., *A survey*

*of results on mobile phone datasets analysis*, 4 EPJ Data Science, https://epjdatascience.springeropen.com/articles/10.1140/epjds/s13688-015-0046-0 (2015) ("even the simple knowledge of communication patterns between individuals or their mobility traces contains highly personal information that one typically does not want to be disclosed").

31. When Congress "seeks information directly from a party," that party "can resist and thereby test the subpoena." *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 501 n.14 (1975). But when Congress "seeks that same information from a third person," that option is not available to the party; the third party might not have an interest in protecting the information or resisting the subpoena, and its "compliance with the subpoena "could frustrate any judicial inquiry." *Id*. For that reason, the law allows the person whose information will be exposed to sue in federal court for an "injunction or declaratory judgment" to block the subpoena's "issuance, service on, or enforcement against" the third party. *U.S. Servicemen's Fund v. Eastland*, 488 F.2d 1252, 1259 (D.C. Cir. 1973), *subsequent merits decision rev'd on other grounds*, 421 U.S. 491; *see also Trump v. Deutsche Bank AG,* 943 F.3d 627, 635 (2d Cir. 2019) ("No dispute that Plaintiffs had standing in the District Court to challenge the lawfulness of the Committees' subpoenas by seeking injunctive relief against the Banks as custodians of the documents.").

### *The Nature of the Congressional Power of Inquiry*

32. While the Congressional power of inquiry is "an essential and appropriate auxiliary to the legislative function," it is limited solely to that "only legitimate object"—legislating. *McGrain v. Daugherty*, 273 U.S. 135, 174 (1927). "[N]either house is invested with 'general' power to inquire into private affairs and compel disclosures." McGrain, 273 U.S. at 173.

33. There is a constitutional burden is on the Committee to justify the need for the information sought.

> Unless the subject matter has been made to appear with undisputable clarity, it is the duty of the investigative body, upon objection of the witness on grounds of pertinency, to state for the record the subject under inquiry at that time and the manner in which the propounded questions are pertinent thereto. To be meaningful, the explanation must describe what the topic under inquiry is and the connective reasoning whereby the precise questions asked relate to it.

*Watkins v. United States*, 354 U.S. 178, 214-15 (1957).

34. "Investigations conducted solely for the personal aggrandizement of the investigators or to 'punish' those investigated are indefensible[,]" and Congress has no power to "try" someone before a subcommittee for any crime or wrongdoing, because law enforcement is assigned "under our Constitution to the Executive and the Judiciary." *Trump v. Mazars USA, LLP*, 140 S. Ct. 2019, 2031-2032 (2020) (internal citations omitted).

35. Deputy Attorney General Lisa Monaco recently gave an exclusive interview to CNN where she made clear that Republican appointees for electors who, like the Wards are alleged to have signed certifications that they were casting their electoral votes for Donald Trump, are the subjects of a federal criminal investigation.[1]

36. "Recipients of legislative subpoenas retain their constitutional rights throughout the course of an investigation. And recipients have long been understood to retain common law and constitutional privileges with respect to certain materials, such as

---

[1] Evan Perez, *Exclusive: Federal prosecutors looking at 2020 fake elector certifications, deputy attorney general tells CNN*, CNN (Jan. 26, 2022) https://www.cnn.com/2022/01/25/politics/fake-trump-electoral-certificates-justice-department/index.html (last accessed Feb. 1, 2022) ("We've received those referrals. Our prosecutors are looking at those and I can't say anything more on ongoing investigations," Monaco said in an exclusive interview).

attorney-client communications and governmental communications protected by executive privilege." *Id.*, 140 S.Ct. at 2032.

# FIRST CAUSE OF ACTION

## Declaratory Judgment and Injunctive Relief

## The Subpoena is an *Ultra vires* Action by the Committee and Thus Invalid

## (Against All Defendants)

37. Plaintiffs incorporate by reference all preceding and subsequent allegations.

38. The Subpoena seeks records relating to a Phone Number assigned to the Plaintiffs, who have not been accused of or charged with presence at the January 6th attack on the United States Capitol.

39. Plaintiffs are volunteer members of the Arizona Republican Party who were the Republican appointees for presidential elector during the last general election.

40. Because the Subpoena fails to comport to its enabling resolution by seeking records pertaining to a Phone Number assigned to Plaintiffs, the Subpoena fails to provide a valid legislative purpose. *See e.g.*, U.S. Const. Art II, Sec. 1, Cl. 2 (the ability to legislate regarding the appointment and mode of appointment of electors belongs exclusively to the States).

41. Furthermore, or in the alternative, because the Subpoena seeks an overbroad survey of the phone conversations and phone metadata of several private citizens unrelated to the enabling resolution of the issuing Committee, it fails to concern a subject on which legislation could be had.

42. Furthermore, or in the alternative, the subpoena fails to set forth with "undisputable clarity" the connection between the records being sought and a valid legislative purpose. That is a constitutional requirement the Committee has not met.

43. Furthermore, or in the alternative, the Subpoena appears to facially serve the purpose of law enforcement or as a prelude to a criminal investigation against individuals

nominated as electors. It is therefore invalid as an *ultra vires* expression of congressional power.

44. Furthermore, or in the alternative, the Phone Number is used for a wide range of personal and professional uses by Plaintiffs, from talking with their children to conversing about sensitive medical information with patients. As such, the subpoena is not narrowly tailored to its purported purpose and is being used as a general power of inquiry into private affairs, and as such must be declared invalid and enjoined.

45. Furthermore, or in the alternative, it is public knowledge that Republicans sent a competing slate of electors from Arizona. Thus, it is highly likely here that the subpoena is being used for a purpose or purposes well outside of the legitimate Congressional subpoena power, whether for the personal aggrandizement of investigators, and/or to punish those investigated, and/or or to expose for the sake of exposure, some or all of which are forbidden *ultra vires* actions and must therefore be declared as such and enjoined.

## SECOND CAUSE OF ACTION

### Violation of the 1st Amendment to the United States Constitution

### (Against Defendants Chairman Thompson and the Committee)

46. Plaintiffs incorporate by reference all preceding and subsequent allegations.

47. An individual's First Amendment freedoms require by nature a "correlative freedom to engage in group effort toward those ends." *Roberts v. United States Jaycees*, 468 U.S. 609, 622 (1984).

48. "Implicit in the right to engage in activities protected by the First Amendment [is] a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends." *Brock v. Local 375, Plumbers Int'l Union*, 860 F.2d 346, 349 (9th Cir. 1988) (internal citations omitted).

49. Kelli Ward is the Chair of the Republican Party of Arizona and served in the Arizona State Senate from 2012 to 2015. It is her job to contact and coordinate with members of her party about elections. Her job responsibilities are especially acute when there is public controversy concerning the outcome of an election. Such a controversy was raging in Arizona (and nationally) during the exact time period covered by the Subpoena.

50. When political associational rights are at stake, the Supreme Court analyzes potential infringement under a framework that it has described as "exacting scrutiny." Exacting scrutiny requires that there be "a substantial relation between the disclosure requirement and a sufficiently important governmental interest, and that the disclosure requirement be narrowly tailored to the interest it promotes." *Ams. for Prosperity Found. v. Bonta*, 141 S. Ct. 2373, 2385 (2021) (internal citations omitted).

51. The Subpoena seeks all connection records and records of session times and durations of all calls made to and from the phone number for a three-month span, beginning just before one of the most contentious elections in modern history.

52. Providing that list to the Committee would give a committee of the House of Representatives, which was formed and chaired by political rivals, the personal telephone numbers, IP addresses, file names of attachments, and contact details of the party members most in communication with the state chair of the party at a time when the legitimacy of the last presidential election was in dispute. As such, the Subpoena provides the Committee with the means to chill the First Amendment associational rights not just of the Plaintiffs but of the entire Republican Party in Arizona.

53. Furthermore, the disclosure required by the Subpoena does not relate to a sufficiently important government interest because there has been no link, alleged or otherwise, between the events of the January 6th attack on the Capitol the Committee was formed to investigate, and the Plaintiffs.

54. Furthermore, or in the alternative, the violation of the First Amendment rights of the Plaintiffs would lead to substantial and serious injury and harassment.

55. Because of the controversy and her associational status, Kelli Ward has received death threats, harassing letters, and phone calls, deeply concerning both her and her family.

56. Michael Ward has received threatening and harassing messages on social media, including threatening messages and sexually explicit comments harassing him and his wife.

57. Therefore, the Subpoena must be declared to be violative of the Plaintiffs' First Amendment right to association and enjoined.

58. Further, the 9th Circuit recognizes a Bivens cause of action for damages for First Amendment retaliation claims. *Boule v. Egbert*, 998 F.3d 370, 390 (9th Cir. 2021) (review pending).

59. Plaintiffs have been injured by this retaliation against their First Amendment protected interests reputationally, professionally, emotionally and personally, in an amount to be determined at trial, and the Defendants' invasion was the cause of Plaintiffs' injuries. They are also entitled to presumed damages for their loss of liberty from the violation in an amount to be proven at trial. This claim is made for those damages suffered to date and those reasonably expected to be suffered in the future.

### THIRD CAUSE OF ACTION

### Violation of State and Federal Statutory Privilege Protections

### (Against Defendants Chairman Thompson and the Committee)

60. Plaintiffs incorporate by reference all preceding and subsequent allegations.

61. "Arizona has adopted physician-patient privilege statutes for both civil and criminal proceedings." *Samaritan Health Servs. v. Glendale*, 148 Ariz. 394, 396, 714 P.2d 887, 889 (1986).

62. In criminal matters:

> A person shall not be examined as a witness in the following cases:…a physician or surgeon, without consent of the physician's or surgeon's patient, as to any information acquired in attending the patient which was necessary to enable the physician or surgeon to prescribe or act for the patient.

Ariz. Rev. Stat. § 13-4062.

63. In civil matters:

> Unless otherwise provided by law, all medical records and payment records, and the information contained in medical records and payment records, are privileged and confidential.

Ariz. Rev. Stat. § 12-2292.

64. Telephone metadata permits even rudimentary algorithms to determine intimate personal details, especially and specifically medical information specifically protected by Arizona law because that people should feel free "to seek treatment undeterred by fear that a private physical condition will become a matter of public discussion." *Carondelet Health Network v. Miller*, 221 Ariz. 614, 616, 212 P.3d 952, 954 (2009).

65. Therefore, the provision of telephone metadata from the Phone Number by virtue of this Subpoena to the Committee constitutes a violation of Arizona state law related to medical privilege and must be enjoined until and unless limitations are put in place to protect the physician-patient privilege.

66. Furthermore, or in the alternative, The Health Insurance Portability and Accountability Act ("HIPAA") establishes procedural safeguards to maintain the privacy of individuals in their protected health information ("PHI").

67. Mole Medical, Michael Ward, and Kelli Ward are "covered entities" for the purpose of HIPAA because they are health care providers who regularly transmit PHI to their patients, including by the use of the Phone Number. 45 C.F.R. § 160.103.

68. In general, "covered entities may not use or disclose protected health information," subject to certain exceptions. 45 C.F.R. § 164.502.

69. HIPAA permits disclosure of protected health information during judicial or administrative proceedings in response to a "subpoena, discovery request, or other lawful process," but only if two conditions are met. 45 C.F.R. § 164.512(e)(1)(ii).

70. First, if the individual who is the subject of the PHI has been given notice of the request, or second, if the covered entity receives satisfactory assurance that "reasonable efforts have been made by such party to secure a qualified protective order" that meets certain requirements. Id., at (e)(1)(ii)(A)-(B).

71. The Committee has not provided any patients with notice of the Subpoena, and no one has even discussed a protective order that would limit the use that the Committee could make of this patient information.

72. Disclosing the phone records and metadata from the Phone Number would provide the PHI of an unknown but quantifiable number of individuals seeking medical treatment from the Plaintiffs to the Committee and potentially to the public at large.

73. Therefore, the enforcement of the Subpoena must be enjoined until and unless limitations are put in place to protect the PHI of the Plaintiffs' patients.

## FOURTH CAUSE OF ACTION

### Violations of the Rules of the House of Representatives

### (Against Defendants Chairman Thompson and the Committee)

*Failure to Issue Subpoena in the Presence of a Majority of the Committee*

74. Plaintiffs incorporate by reference all preceding and subsequent allegations.

75. The Subpoena issued on January 19, 2022, with the signature of the Chairman, Bennie Thompson (D-MS).

76. At the time of issuance of the Subpoena, the Committee had only nine members, seven Democrats and two Republicans.

77. The Committee's enacting resolution, H. Res. 503, passed by the House on June 30, 2021, provided that the Committee was to have 13 members. H. Res. 503 Section 2(a).

78. At the time the subpoena was issued, the Committee had only nine members of which, on information and belief, none were appointed in consultation with the Minority Leader.

79. Under the House rules, a "measure … may not be reported by a committee unless a majority of the committee is actually present." (Rule XI, clause 2(h)(1)).

80. To the extent that, on information and belief, the Subpoena constituted a "measure" under the Rule, that required a meeting at which a majority of the Committee was actually present, the Subpoena was not properly issued.

81. To the extent that, on information and belief, no meeting took place at which a majority of the Committee (7 of the 13 required members) was present, the Subpoena was not issued in accordance with the Rules of the House.

82. The specific power of the Committee to issue subpoenas for records is governed by the Rules of the House. Rule XI, clause 2(m) provides that subpoenas may be issued by a committee in the conduct of an investigation "only when authorized by the committee or subcommittee, a majority being present." (*Id.* at subsection (3)(A)(i)).

83. H. Res. 503 did not change the requirement in Rule XI, clause 2(m) that a majority of the issuing committee be present to authorize issuance of any subpoena.

84. Therefore, to the extent that, on information and belief, the majority of the Committee, seven members, did not vote in favor of issuing the Subpoena at a meeting

with a "majority being present," the Subpoena was issued contrary to the Rules of the House and should be declared invalid and enjoined.

*Failure to Issue Subpoena in the Presence of a Quorum*

85. Further, or in the alternative, H. Res. 503 provides that two members would be a quorum for "taking testimony or receiving evidence." However, the Subpoena was issued for records, not to take testimony or receive evidence.

86. H. Res. 503 additionally provides that one-third of the members is a quorum for taking "any action other than one for which the presence of a majority of the Select Committee is required." (*Id*. at Sec. 5(c)(3)).

87. Issuing the Subpoena is a committee action that requires action at a meeting at which a majority of the committee was present and therefore the quorum requirement is a majority of the committee be present. (Rule XI, clause 2(m), at subsection (3)(A)(i)).

88. To the extent that, on information and belief, a quorum was not present for the issuance of the Subpoena, it was issued improperly and is a violation of House Rules and should be declared invalid and enjoined.

*Failure to Properly Delegate Authority for Subpoena Issuance to the Chairman*

89. Further, or in the alternative, the Rules of the House also provide that the Committee may delegate the power to issue subpoenas to the chair of the Committee. (House Rule XI, clause 2(m)(3)(A)(i)): "The power to authorized and issue subpoenas … may be delegated to the chair of the committee under such rules and under such limitations as the committee may prescribe.").

90. It is inferable from the House Rules that any committee action to delegate to the Chairman the authority to undertake actions that would require action by a majority of the committee at meeting where such a majority is present would likewise have the same quorum and vote requirements.

91. To the extent that, on information and belief, the Committee did not take a proper action at a meeting at which a majority was present when any delegation of authority was made to the Chairman to alone issue Subpoenas, the Subpoena was not properly issued and should be declared invalid and enjoined.

**PRAYER FOR RELIEF**

92. Plaintiffs request relief as follows:

   a. That the Court assert jurisdiction over this action;

   b. That the Court enter an order declaring that Defendants' actions, as set forth in this Complaint, violate federal law and the laws of the State of Arizona as set forth above;

   c. That the Court enjoin Defendants' unlawful acts as set forth in this Complaint, quash the Subpoena, enjoin Chairman Thompson and the Committee from enforcing the Subpoena, and enjoin Defendant T-Mobile from producing any documents in response to the Subpoena;

   d. For damages in an amount to be proven at trial;

   e. That the Court awards Plaintiffs their reasonable attorneys' fees and costs of suit; and

   f. That the Court award any and all such other and further relief as the Court may deem just and proper under the circumstances.

   g. That the Court set this matter for a jury trial on all issues so triable.

Respectfully submitted this 1st day of February, 2022.

/s/ Alexander Kolodin
DAVILLIER LAW GROUP, LLC
4105 North 20th Street
Suite 110
Phoenix, AZ 85016

/s/ Laurin Mills
Laurin Mills
SAMEK | WERTHER | MILLS, LLC
2000 Duke Street
Suite 300
Alexandria, VA 22314
(*Pro hac vice* to be submitted)
