Alexander Kolodin (SBN 030826)
Roger Strassburg (SBN 016314)
Veronica Lucero (SBN 030292)
Arno Naeckel (SBN 026158)
**The Davillier Law Group, LLC**
4105 North 20th Street
Suite 110
Phoenix, AZ 85016
602-730-2985
Email: akolodin@davillierlawgroup.com
    rstrassburg@davillierlawgroup.com
    vlucero@davillierlawgroup.com
    anaeckel@davillierlawgroup.com
    phxadmin@davillierlawgroup.com (file copies)

Laurin Mills (*pro hac vice* to be submitted)
**Samek | Werther | Mills, LLC**
2000 Duke Street
Suite 300
Alexandria, VA 22314
703-547-4693
Email: laurin@samek-law.com

*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA, PRESCOTT DIVISION

| | |
|---|---|
| Dr. Michael P. Ward, D.O. and Dr. Kelli Ward, D.O., husband and wife; and Mole Medical Services, P.C., an Arizona Professional Corporation;<br><br>Plaintiffs,<br><br>v.<br><br>Bennie G. Thompson, in his official capacity as Chairman of the House Select Committee to Investigate the January 6th Attack on the United States Capitol; Select Committee to Investigate the January 6th Attack on the | Case No.:<br><br>**Motion to Quash Congressional Subpoena** |

United States Capitol, a committee of the United States House of Representatives; T-Mobile USA, Inc., a Delaware Corporation;

    Defendants.

Drs. Michael P. Ward and Kelli Ward, on behalf of themselves and Mole Medical Services, PC ("Mole Medical") (collectively the "Wards"), move to quash a subpoena *duces tecum* issued by the United States House of Representatives Select Committee to Investigate the January 6th Attack on the United States Capitol (the "Committee"). For the reasons set forth in the Memorandum below, this Motion should be granted.

## MEMORANDUM IN SUPPORT OF MOTION TO QUASH SUBPOENA

The Wards submit this Memorandum in support of their Motion to Quash the Subpoena issued by the Committee. The Subpoena compromises interests protected by the physician-patient privilege; obligations to patients under the Health Insurance Portability and Accountability Act ("HIPAA"); core First Amendment rights of free association; and the personal privacy rights of individuals that the Committee has no reason to investigate.

## STATEMENT OF FACTS

On January 25, 2022, Mole Medical received a letter dated January 24, 2022, from the T-Mobile Legal and Emergency Response Team stating:

> Dear Sir or Madam,
>
> T-Mobile USA, Inc. ("T-Mobile") received a subpoena for records related to a phone number associated with your T-Mobile account from the U.S. House Select Committee to Investigate the January 6th Attack on the United States Capitol. A copy of the relevant portions of the subpoena is included with this letter.
>
> T-Mobile intends to produce records associated with your account in response to the subpoena on February 4, 2022, unless you or your representative provide the company with documentation no later than February 2, 2022, confirming that you have filed a motion for a protective order, motion to quash, or other legal process seeking to block compliance with the subpoena. Please direct any motion, legal process or question to T-Mobile's Legal and Emergency Response Team at LERCustomerNotifications@T-Mobile.com.

Exh. A.

The attached Subpoena calls for production of the requested information on February 2, 2022:

**SUBPOENA**

**BY AUTHORITY OF THE HOUSE OF REPRESENTATIVES OF THE CONGRESS OF THE UNITED STATES OF AMERICA**

To T-Mobile

You are hereby commanded to be and appear before the Select Committee to Investigate the January 6th Attack on the United States Capitol of the House of Representatives of the United States at the place, date, and time specified below.

☑ to produce the things identified on the attached schedule touching matters of inquiry committed to said committee or subcommittee; and you are not to depart without leave of said committee or subcommittee.

Place of production: 1540A Longworth House Office Building, Washington, DC 20515

Date: February 2, 2022     Time: 10:00 a.m.

*Id.* at p. 2.

The Subpoena seeks "subscriber information" associated with a single account number that T-Mobile has assigned to Mole Medical:

Section A – Records to Be Produced for Each Phone Number

1. Subscriber Information: All subscriber information for the Phone Number, including:

   a. Name, subscriber name, physical address, billing address, e-mail address, and any other address and contact information;

   b. All authorized users on the associated account;

   c. All phone numbers associated with the account;

   d. Length of service (including start date) and types of service utilized;

   e. Telephone or instrument numbers (including MAC addresses), Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN") Mobile Equipment Identifier ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), International Mobile Subscriber Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI") associated with the accounts;

   f. Activation date and termination date of each device associated with the account;

   g. Any and all number and/or account number changes prior to and after the account was activated;

   h. Other subscriber numbers or identities (including temporarily assigned network addresses and registration Internet Protocol ("IP") addresses); and

The Subpoena also seeks "Connection Records, and Records of Session Times and Durations":

2. Connection Records and Records of Session Times and Durations: All call, message (SMS & MMS), Internet Protocol ("IP"), and data-connection detail records associated with the Phone Numbers, including all phone numbers, IP addresses, or devices that communicated with the Phone Number via delivered and undelivered inbound, outbound, and routed calls, messages, voicemail, and data connections.

Kelli Ward is both a practicing physician and the Chair of the Arizona Republican Party. K. Ward Declaration at ¶¶ 4-5, 8 (Comp. Exh. B). As a physician, she practices exclusively in the field of medical weight loss, which can be a sensitive issue for some patients. *Id.* at ¶¶ 5, 10-11. Dr. Kelli Ward uses her Mole Medical telephone line for patient calls. *Id.* at ¶¶ 12-18.

For many of Kelli Ward's patients, the mere fact that they are seeing a doctor for medical weight loss is a sensitive issue, and some bring up other issues, including psychological problems, anxiety, depression, insomnia, diabetes, and eating disorders

during their calls with Dr. Ward, all of which are intensely personal and private medical concerns. *Id.* ¶ 11. Dr. Ward also uses her Mole Medical line for calls with friends and family as well as calls associated with Arizona politics and political issues. *Id.* at ¶¶ 12-18.

There are three other lines associated with Mole Medical's account. One of the lines is used by Dr. Kelli Ward's husband and the other two are used by the Wards' two children. *Id.* at ¶ 17. There is no legitimate reason for Congressional investigators to seek information associated with the telephone calls of Dr. Ward's family members.

In certain circumstances, Dr. Michael Ward gives the Phone Number to patients to follow up on their questions, the status of their condition, and the state of the improvement of their health. M. Ward Declaration at ¶ 8 (Comp. Ex. C). During the COVID pandemic, Michael Ward has typically given out the Phone Number more frequently so that he can answer additional questions about treatment, follow-up, and prescriptions. *Id.* ¶ 9.

The pertinent facts are more fully set forth in the Complaint filed herewith, with appropriate citations to the Declarations of Drs. Kelli and Michael Ward as well as to the subpoena. This Complaint is expressly incorporated herein by reference.

## **ARGUMENT**

The Subpoena to T-Mobile should be quashed. "Congress has no enumerated constitutional power to conduct investigations or issue subpoenas," but the necessity "to secure needed information in order to legislate" provided the development of this "broad and indispensable" implied power. *Trump v. Mazars USA*, LLP, 140 S. Ct. 2019, 2031 (2020) (internal citations omitted); *Watkins v. United States*, 354 U. S. 178, 187 (1957). While the Congressional power of inquiry is "an essential and appropriate auxiliary to the legislative function," it is limited solely to that "only legitimate object"—legislating. *McGrain v. Daugherty*, 273 U.S. 135, 174 (1927). "[N]either house is invested with

'general' power to inquire into private affairs and compel disclosures." *McGrain*, 273 U.S. at 173.

Supreme Court precedent establishes that the burden is on the Committee to justify the need for the information sought here:

> Unless the subject matter has been made to appear with undisputable clarity, it is the duty of the investigative body, upon objection of the witness on grounds of pertinency, to state for the record the subject under inquiry at that time and the manner in which the propounded questions are pertinent thereto. To be meaningful, the explanation must describe what the topic under inquiry is and the connective reasoning whereby the precise questions asked relate to it.

*Watkins v. United States*, 354 U.S. 178, 214-15 (1957).

Thus, in responding to this Motion to Quash, the Committee has the threshold burden of articulating a need for the information sought that falls within the limits of its investigative powers.

### A. The T-Mobile Subpoena Violates Federal and State Statutory Privileges.

The Committee seeks call data records (telephone record "metadata" that reveals personal telephone numbers and the dates, times, and durations of patient calls to their physicians) that potentially alerts Congressional investigators to the identity of the Wards' patients and the existence of their private medical conditions. The scope of the T-Mobile Subpoena, thus, violates Arizona state law privileges, privileges protected by the Federal Rules of Evidence, and federal statutory law protecting patient information.

### 1. The Subpoena Infringes the Physician-Patient Privilege.

"Arizona has adopted physician-patient privilege statutes for both civil and criminal proceedings." *Samaritan Health Servs. v. Glendale*, 148 Ariz. 394, 396, 714 P.2d 887, 889 (1986). In criminal matters:

> A person shall not be examined as a witness in the following cases:…a physician or surgeon, without consent of the physician's or surgeon's patient, as to any information acquired in attending the patient which was necessary to enable the physician or surgeon to prescribe or act for the patient.

Ariz. Rev. Stat. § 13-4062.

> In civil matters:
>
> Unless otherwise provided by law, all medical records and payment records, and the information contained in medical records and payment records, are privileged and confidential.

Ariz. Rev. Stat. § 12-2292.

The Subpoena requires, in addition to account information pertaining to the single listed phone number in Section B, that T-Mobile provide "connection records and records of session times and durations," specifically:

> All call, message (SMS & MMS), Internet Protocol ("IP"), and data-connection detail records associated with the Phone Numbers, including all phone numbers, IP addresses, or devices that communicated with the Phone Number via delivered and undelivered inbound, outbound, and routed calls, messages, voicemail, and data connections.

Exh. A, § A, ¶ 2.

The information sought by the Subpoena seeks telephone "metadata," which is data about calls to or from a certain number (other than a recording of the call). "A new study from Stanford University charts exactly what can be learned from telephone metadata. The

researchers used rudimentary techniques to show that your name or relationship status are immediately apparent from telephone metadata, but so are countless other personal details." https://www.pbs.org/newshour/science/your-phone-metadata-is-more-revealing-than-you-think (last accessed January 30, 2022).

"[Arizona's] legislature has determined that the public good is best served by rendering communications made by patients to their physicians privileged." *Tucson Med. Ctr. v. Rowles*, 21 Ariz. App. 424, 425, 520 P.2d 518, 519 (1974) (internal citation omitted). The privilege reflects a societal judgment that people should feel free "to seek treatment undeterred by fear that a private physical condition will become a matter of public discussion." *Carondelet Health Network v. Miller*, 221 Ariz. 614, 616, 212 P.3d 952, 954 (2009). "The recording of confidential communications between physician and patient in official hospital records in no way diminishes the confidential nature of the communications." *Tucson Med. Ctr.*, 21 Ariz. App. at 426, 520 P.2d at 520 (internal citation omitted). So critical is this privilege to public health that, even when neither the patient nor physician are party to the proceeding, a hospital holding the records had the obligation to intervene to protect them. *Id.*, 21 Ariz. App. at 429, 520 P.2d at 523. While the courts have, in limited situations, constrained this privilege, the inroads against the privileges were carefully limited. *See Carondelet Health Network v. Miller*, 221 Ariz. 614, 212 P.3d 952 (2009) (patient identifying information released because he witnessed litigation-related events in an adjoining hospital room); *Samaritan Health Servs. v. Glendale*, 148 Ariz. 394, 397, 714 P.2d 887, 890 (1986) (identifying state statutes limiting the physician-patient privilege, primarily in reporting disease or violent crime statistical data to relevant authorities).

### 2. The Subpoena Violates Rights Protected by HIPAA.

The Health Insurance Portability and Accountability Act ("HIPAA") establishes procedural safeguards to maintain the privacy of individuals in their protected health

information ("PHI"). Mole Medical and the Witnesses are "covered entities" for the purpose of HIPAA because they are health care providers who regularly transmit information to their patients, including by the use of the phone number that is the subject of the Subpoena. 45 C.F.R. § 160.103.

In general, "covered entities may not use or disclose protected health information," subject to certain exceptions. 45 C.F.R. § 164.502. HIPAA does not require specific practices or actions to protect protected health information, but rather requires that the covered entity "reasonably safeguard protected health information from any intentional or unintentional use or disclosure that is in violation of the standards." 45 C.F.R. § 164.530(c)(2)(i).

HIPAA permits disclosure of protected health information during judicial or administrative proceedings in response to a "subpoena, discovery request, or other lawful process," but only if two conditions are met. 45 C.F.R. § 164.512(e)(1)(ii). First, if the individual who is the subject of the protected health information has been given notice of the request, or second, if the covered entity receives satisfactory assurance that "reasonable efforts have been made by such party to secure a qualified protective order" that meets certain requirements. *Id*., at (e)(1)(ii)(A)-(B). The Committee has not provided any patients with notice of the Subpoena, and no one has even discussed a protective order that would limit the use that the Committee could make of this patient information.

Protected health information is individually identifiable health information held in any form or medium; individually identifiable health information is "information that is a subset of health information, including demographic information collected from an individual" and:

> Relates to the past, present, or future physical or mental health or condition of an individual; the provision of health care to an individual; or the past,

present, or future payment for the provision of health care to an individual; and

    (i) That identifies the individual; or

    (ii) With respect to which there is a reasonable basis to believe the information can be used to identify the individual.

45 C.F.R. § 160.103 ("Individually identifiable health information").

Because of the breadth of the definition of both "protected health information" and the demographic identifiers that trigger classification of communication as protected, a list of phone numbers of patients who have contacted the Witnesses, even without their names attached, is a breach of their personal information. A simple search for a phone number gathered from such a phone or SMS record will rapidly return a result tied to a particular individual. When combined with the potential for embarrassment or publicity due to the link between the individual and their medical consultation with the witnesses, the necessity for HIPAA, and for limitation to the Subpoena, becomes particularly apparent.

Because the Subpoena is overly broad and implicates patient privacy rights protected under both state and federal law, it should be quashed. To the extent that the Committee wishes to pursue call record data that does not implicate patient privacy concerns, and to the extent, if any, this Court finds the Subpoena should not be quashed in its entirety, the Court should order the Committee to work with the Wards to craft a much more narrowly tailored subpoena that would allow the Committee to pursue its investigation without compromising patient privacy rights.

### B. The Subpoena Infringes the Wards' First Amendment Associational Rights

An individual's First Amendment freedoms require by nature a "correlative freedom to engage in group effort toward those ends." *Roberts v. United States Jaycees*, 468 U.S. 609, 622 (1984). "Implicit in the right to engage in activities protected by the First Amendment [is] a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends." *Brock v. Local 375, Plumbers Int'l Union*, 860 F.2d 346, 349 (9th Cir. 1988) (internal citations omitted).

This associational interest is not absolute but bounded by compelling state interests "unrelated to the suppression of ideas" that cannot be achieved through means "significantly less restrictive of associational freedoms." *Id.* "Where First Amendment rights are asserted to bar governmental interrogation, resolution of the issue always involves a balancing by the courts of the competing private and public interests at stake in the particular circumstances shown." *Barenblatt v. United States*, 360 U.S. 109, 126 (1959). These private interests at stake are no bare legalism: "abuses of the investigative process" may lead to "abridgement of protected freedoms," causing widespread and "disastrous" effects, on both the life of the witness and upon those "identified by witnesses and thereby placed in the same glare of publicity." *Watkins v. United States*, 354 U.S. 178, 197-98 (1957).

Kelli Ward is the Chair of the Republican Party of Arizona. It is her job to contact and coordinate with members of her party about elections. Her job responsibilities are especially acute when there is public controversy concerning the outcome of an election. Such a controversy was raging in Arizona (and nationally) during the exact time period covered by the Subpoena.

When political associational rights are at stake, the Supreme Court analyzes potential infringement under a framework that it has described as "exacting scrutiny." Exacting scrutiny requires that there be "a substantial relation between the disclosure requirement and a sufficiently important governmental interest, and that the disclosure requirement be narrowly tailored to the interest it promotes." *Ams. for Prosperity Found. v. Bonta*, 141 S. Ct. 2373, 2385 (2021) (internal citations omitted).

The seminal exacting scrutiny case is *NAACP v. Alabama*. There, the State of Alabama sought the compelled disclosure of the NAACP's membership list to stop the NAACP from doing business in the state. The Supreme Court held that "inviolability of privacy in group association may in many circumstances be indispensable to preservation of freedom of association, particularly where a group espouses dissident beliefs." *NAACP v. Alabama*, 357 U.S. 449, 462 (1958). "The protections of the First Amendment are triggered not only by actual restrictions on an individual's ability to join with others to further shared goals. The risk of a chilling effect on association is enough, because First Amendment freedoms need breathing space to survive." *Ams. for Prosperity Found. v. Bonta*, 141 S. Ct. at 2389 (2021) (internal citation omitted).

Dr. Kelli Ward served in the Arizona State Senate from 2012 to 2015 and is current the chair of the Arizona Republican Party. Dr. Michael Ward is also an active member of the Republican Party. The Subpoena seeks all connection records and records of session times and durations of all calls made to and from the phone number for a three-month span, beginning just before one of the most contentious elections in modern history.

Providing that list to the Committee would give a committee of the House of Representatives, which was formed and chaired by political rivals, the personal telephone numbers, IP addresses, file names of attachments, and contact details of the party members most in communication with the state chair of the party at a time when the legitimacy of the last presidential election was in dispute. As such, the Subpoena provides the

Committee with the means to chill the First Amendment associational rights not just of the Wards but of the entire Republican Party in Arizona. The "inviolability of privacy in group association" is in many circumstances "indispensable to [the] preservation of freedom of association, particularly where a group espouses dissident beliefs." *NAACP v. Alabama*, 357 U.S. at 462. This is one of those circumstances.

### C. The T-Mobile Subpoena is an *Ultra Vires* Action by the Committee and Thus Invalid

The Supreme Court has enumerated the following limitations on the Congressional subpoena power that are applicable here: (1) the subpoena must relate to a legitimate task of Congress; (2) the subpoena must serve a valid legislative purpose; (3) the subpoena must concern a subject on which legislation could be had; (4) the subpoena must not be for the purpose of law enforcement; (5) Congress has no power to "try" someone before a subcommittee for any crime or wrongdoing; (6) Congress has no "general power to inquire into private affairs and compel disclosures"; (7) Congress lacks the power to "expose for the sake of exposure"; (8) "Investigations conducted solely for the personal aggrandizement of the investigators or to 'punish' those investigated are indefensible" are forbidden; (9) recipients of legislative subpoenas retain their constitutional rights throughout the course of an investigation; and (10) recipients of subpoenas retain common law and constitutional privileges with respect to certain materials, such as attorney-client communications and governmental communications protected by executive privilege. *Trump v. Mazars*, 140 S. Ct. at 2131-32.

The subpoena does not relate to a legitimate task of Congress for several reasons. First, the subpoena fails to comport with the Committee's enabling resolution. Second, and relatedly, the subpoena has been issued in aid of a criminal investigation, or at least for the purpose of harassing and threatening those targeted with the threat of one. Third,

the subpoena is overbroad. Fourth, the subpoena does not concern a subject on which legislation may be had.

The subpoena fails to comport with the Committee's enabling resolution (H. Res. 503) (the "Enabling Resolution"). The Enabling Resolution established the committee to because the Committee's enabling resolution "established the Select Committee to Investigate the January 6th Attack on the United States Capitol[.]." Enabling Resolution Sec. 1 ("Establishment"). However, according to Deputy Attorney General Lisa Monaco, the criminal investigation of which this subpoena forms a part is an investigation into whether Plaintiffs and others committed a crime by sending "fake Electoral College certifications that declared former President Donald Trump the winner of states he lost[,]"[2] not whether Plaintiffs participated in the planning and execution of the Capitol Riot. Further, it is public knowledge that Republicans sent a competing slate of electors for Arizona. No investigation is necessary to confirm this. Therefore, the purpose of the subpoena appears to be merely to harass the individuals who engaged in this First Amendment protected political activity.

Additionally, even if such a subpoena were related to the Enabling Resolution, as set forth above, Congress has no power to issue subpoenas in furtherance of a criminal investigation. *Trump v. Mazars*, 140 S. Ct. at 2131-32.

The subpoena is also overbroad. In addition to the reasons set forth elsewhere herein, this is because the subpoena, on its face does not, and cannot, satisfy the substantial constitutional burden that it set forth with "undisputable clarity" how its blanket request from data regarding every call and message from every phone line related to the Mole

---

[2] Evan Perez, *Exclusive: Federal prosecutors looking at 2020 fake elector certifications, deputy attorney general tells CNN*, CNN (Jan. 26, 2022) https://www.cnn.com/2022/01/25/politics/fake-trump-electoral-certificates-justice-department/index.html (last accessed Feb. 1, 2022).

Medical account (including those lines belonging to the Wards' children and those calls with friends and family members) relates to an authorized and lawful purpose of the Committee's investigation. *Watkins v. United States*, 354 U.S. 178, 214-15 (1957).

Finally, the Subpoena does not relate to a subject on which legislation may be had. The appointment and mode of appointment of electors belong exclusively to the States under the Constitution. U.S. Const. Art II, Sec. 1, Cl. 2. Electors are, as remarked by Justice Gray *in In re Green*, 134 U.S. 377, 379, "no more officers or agents of the United States than are the members of the state legislatures when acting as electors of Federal senators, or the people of the States when acting as the electors of representatives in Congress." *McPherson v. Blacker*, 146 U.S. 1, 35 (1892).

### D. Congress Has No Legitimate Investigative Interest in Calls Made by or to the Wards' Children.

There are three other lines associated with the telephone number under Subpoena. While Dr. Kelli Ward is a prominent figure in Arizona politics, Congressional investigators cannot possibly have any legitimate investigative interest in invading the personal privacy rights of the Wards' children.

### CONCLUSION

For the foregoing reasons, this Motion to Quash should be granted.

Respectfully submitted this 1st day of February, 2022.

<u>/s/ Roger Strassburg</u>
DAVILLIER LAW GROUP, LLC
4105 North 20th Street
Suite 110
Phoenix, AZ 85016

<u>/s/ Laurin Mills</u>
Laurin Mills
SAMEK | WERTHER | MILLS, LLC
2000 Duke Street
Suite 300
Alexandria, VA 22314
(*Pro hac vice* to be submitted)

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| In Re Subpoena to T-Mobile Issued by Select Committee to Investigate the January 6th Attack on the U.S. Capitol | ) ) ) ) ) ) ) ) Case No.: MOTION TO QUASH CONGRESSIONAL SUBPOENA |

### O R D E R

THIS COURT, having considered Movants' Motion to Quash Congressional Subpoena (ECF Doc. No. __), any opposition thereto, and the entire record herein, is of the opinion that said motion is well taken and should be an is GRANTED.

The subpoena issued to T-Mobile seeking information related to a number assigned to Mole Medical is hereby QUASHED and T-Mobile is ordered not to respond to that subpoena.

SO ORDERED this ____ day of February, 2022.

_____

1 | Judge
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28