DOUGLAS N. LETTER (D.C. Bar No. 253492)
  General Counsel
TODD B. TATELMAN (VA Bar No. 66008)
  Principal Deputy General Counsel
ERIC R. COLUMBUS (D.C. Bar No. 487736)
  Special Litigation Counsel

OFFICE OF GENERAL COUNSEL
U.S. HOUSE OF REPRESENTATIVES
5140 O'Neill House Office Building
Washington, D.C. 20515
Telephone: (202) 225-9700
Douglas.Letter@mail.house.gov

*Attorneys for Congressional Defendants*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Dr. Michael P. Ward, et al.,<br><br>              Plaintiffs,<br><br>     v.<br><br>Bennie G. Thompson, et al.,<br><br>              Defendants. | Case No. 3:22-cv-08015-DJH<br><br>**REPLY IN SUPPORT OF CONGRESSIONAL DEFENDANTS' MOTION TO DISMISS**<br><br>Assigned to: Judge Diane Humetewa |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ................................................................................................................... 1

ARGUMENT .......................................................................................................................... 1

I.      The Court Lacks Subject Matter Jurisdiction ........................................................... 2

II.     The Complaint Fails To State A Claim ................................................................... 5

CONCLUSION ..................................................................................................................... 11

# TABLE OF AUTHORITIES

Cases

*Ams. for Prosperity Found. v. Bonta*,
 141 S. Ct. 2373 (2021)......................................................................................................7

*Barenblatt v. United States*,
 360 U.S. 109 (1959).........................................................................................................6

*Bean LLC v. John Doe Bank*,
 291 F. Supp. 3d 34 (D.D.C. 2018)...................................................................................7

*Bolbol v. City of Daly City*,
 754 F. Supp. 2d 1095 (N.D. Cal. 2010) ...........................................................................5

*Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*,
 531 U.S. 288 (2001).........................................................................................................3

*Brock v. Loc. 375, Plumbers Int'l Union of Am., AFL-CIO*,
 860 F.2d 346 (9th Cir. 1988) ...........................................................................................8

*Brown & Williamson Tobacco Corp. v. Wigand*,
 913 F. Supp. 530 (W.D. Ky. 1996)..................................................................................4

*Buckley v. Valeo*,
 424 U.S. 1 (1976).........................................................................................................6, 7

*Budowich v. Pelosi*,
 — F. Supp. 3d —, 2022 WL 2274359 (D.D.C. June 23, 2022) ...................................3, 4

*Comm. on Judiciary of U.S. House of Representatives v. McGahn*,
 968 F.3d 755 (D.C. Cir. 2020).........................................................................................2

*Eastland v. U.S. Servicemen's Fund*,
 421 U.S. 491 (1975).......................................................................................................10

*Eastman v. Thompson*,
 No. 8:22-cv-00099 (C.D. Cal. Mar. 2, 2022)...................................................................6

*Jackson v. Metro. Edison Co.*,
 419 U.S. 345 (1974).........................................................................................................3

*Jenkins v. Cnty. of Riverside*,
 398 F.3d 1093 (9th Cir. 2005) .........................................................................................5

*McPhaul v. United States*,
 364 U.S. 372 (1960)...................................................................................................7, 10

*Quinn v. United States*,
    349 U.S. 155 (1955)................................................................................................2

*Republican National Committee v. Pelosi*,
    — F. Supp. 3d —, 2022 WL 1294509 (D.D.C. May 1, 2022) ........................4, 10

*Roberts v. AT&T Mobility LLC*,
    877 F.3d 833 (9th Cir. 2017) ...................................................................................3

*Rockefeller v. Bingaman*,
    234 F. App'x 852 (10th Cir. 2007) ..........................................................................2

*Senate Permanent Subcomm. v. Ferrer*,
    199 F. Supp. 3d 125 (D.D.C. 2016) .........................................................................6

*Smith v. AT&T Corp.*,
    Civ. No. 04-954, 2006 WL 2019647 (D.N.M. Apr. 12, 2006) .................................3

*Trump v. Mazars, LLP*,
    39 F.4th 774 (D.C. Cir. 2022) ..................................................................................2

*Trump v. Thompson*,
    20 F.4th 10 (D.C. Cir. 2021) ....................................................................................6

*Williams v. Am. Tel. & Tel. Commc'ns*,
    Civ. No. 15-3543, 2016 WL 915361 (E.D. La. Mar. 9, 2016) .................................3

Statutes

2 U.S.C. § 192 ...................................................................................................................2

42 U.S.C. § 1320d .............................................................................................................8

Regulations

45 C.F.R. § 160.103 ..........................................................................................................9

Legislative Authorities

H. Res. 503, 117th Cong. (2021).............................................................................1, 9, 10

**INTRODUCTION**

The arguments advanced by Plaintiff, Dr. Kelli Ward, are all unavailing. Her claims that efforts to undermine the 2020 Presidential election results are protected by the First Amendment and that any investigation of those schemes will have a chilling effect, *see* ECF No. 51 at 1, are meritless. Dr. Ward's other arguments—regarding T-Mobile's status as a state actor, the application of HIPAA to the data sought by the subpoena, and the Select Committee's lack of legislative purpose—similarly fall short.

The Select Committee seeks to obtain information about the causes of the January 6th attack on the Capitol so that it may make legislative recommendations to safeguard our democracy and prevent another such attack. Dr. Ward's activities leading up to and in the wake of the January 6, 2021 Joint Session of Congress provide an ample basis for the Select Committee to investigate her role, consistent with its mission to "investigate and report upon the facts, circumstances, and causes relating to the January 6" attack. H. Res. 503, 117th Cong. § 3(1) (2021). Because Dr. Ward provides no basis to doubt the legality of the Select Committee's subpoena to T-Mobile, the Complaint should be dismissed.

**ARGUMENT**

Dr. Ward's opposition largely ignores or misapplies governing precedent and fails to engage meaningfully with the arguments advanced in the motion to dismiss. *First*, the opposition fails to cite any waiver of sovereign immunity that would allow this suit to proceed against the Congressional Defendants. *Second*, contrary to Dr. Ward's assertion, T-Mobile is not a state actor. But even if it were, that is irrelevant to whether this Court has subject matter jurisdiction over the Congressional Defendants. *Third*, the opposition fails to state a claim under the First Amendment. *Fourth*, despite Dr. Ward's convoluted arguments, HIPAA clearly does not apply to either the Select Committee or T-Mobile. *Finally*, the Select Committee's investigation of Dr. Ward's role regarding efforts to overturn the 2020 presidential election results and her connections to others involved in those efforts serves a valid legislative purpose.

Because Dr. Ward provides no basis to doubt the legality of the Select Committee's subpoena to T-Mobile, her Complaint should be dismissed as to the Congressional Defendants.

## I. The Court Lacks Subject Matter Jurisdiction

**1.** Dr. Ward provides no response to the argument that the doctrine of sovereign immunity "forecloses ... claims against the House of Representatives and Senate as institutions, and Representative[s] ... and Senator[s] ... as individuals acting in their official capacities." *Rockefeller v. Bingaman*, 234 F. App'x 852, 855 (10th Cir. 2007). Instead, Dr. Ward merely asserts that "congressional subpoenas are susceptible to challenge in federal court on several grounds." ECF No. 51 at 3. This argument misses the point. The question is not whether circumstances exist in which a Congressional subpoena can be adjudicated by a court, but rather, whether this case presents one of those circumstances. As we have pointed out, *see* ECF No. 46 at 5, because no waiver of sovereign immunity applies, this Court lacks subject matter jurisdiction *here*.

The cases Dr. Ward relies on also miss the mark. Dr. Ward first cites *Trump v. Mazars, LLP*, 39 F.4th 774 (D.C. Cir. 2022), a case in which the House Committee on Oversight and Reform voluntarily intervened to defend the propriety of its subpoena, thereby affirmatively consenting to the jurisdiction of the Court. Next, Dr. Ward invokes *Quinn v. United States*, 349 U.S. 155 (1955), which was an appeal from a criminal conviction for violation of the contempt of Congress statute, 2 U.S.C. § 192, not a civil action like this one. Finally, Dr. Ward cites *Committee on Judiciary of U.S. House of Representatives v. McGahn*, 968 F.3d 755 (D.C. Cir. 2020), in which the Committee was the plaintiff and, as such, bore the burden of establishing subject matter jurisdiction. All of the cases cited by Dr. Ward are inapposite because none involved a civil suit like this one, where a third party is attempting to sue Members of Congress and a Select Committee of Congress without their consent and without identifying any applicable waiver of sovereign immunity.

    **2.** Next, Dr. Ward attempts to establish this Court's subject matter jurisdiction by asserting that T-Mobile is a "state actor." This contention is incorrect and beside the point.

    The Congressional Defendants have not argued that T-Mobile has sovereign immunity, only that the Congressional Defendants do. *See* ECF No. 46 at 5. There is a simple reason for this: T-Mobile is a private party, not a state actor. To hold private actors responsible for state action, Dr. Ward must show "such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001) (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)). Dr. Ward has failed to meet this burden.

    Compliance with a governmental subpoena does not convert an otherwise private actor into a state actor. Dr. Ward does not cite a single case where a private entity's compliance with a subpoena constituted state action. Here, T-Mobile is a private entity and recipient of a Congressional subpoena; it is not acting as the government, nor is it "somehow transform[ed] … into a state actor" by receiving and potentially responding to the subpoena. *Budowich v. Pelosi*, — F. Supp. 3d —, 2022 WL 2274359, at *11 (D.D.C. June 23, 2022), *appeal pending*, No. 22-5222 (D.C. Cir.). If subpoena compliance were sufficient to create state action, "then presumably all private parties that comply with a government subpoena would become state actors" and would therefore "be bound by the U.S. and state constitutions." *Id.* This would "force subpoena recipients to choose between facing penalties (perhaps including contempt [of Congress] and criminal prosecution) for non-compliance or being sued for constitutional violations." *Id.*

    Courts have regularly held in a variety of contexts that telecommunications companies, such as T-Mobile, generally are not state actors. *See, e.g.*, *Roberts v. AT&T Mobility LLC*, 877 F.3d 833, 845 (9th Cir. 2017) ("Plaintiffs must, but cannot, show AT&T's conduct is attributable to the state.").[1] In addition, in *Budowich*—a case

---

[1] *See also, e.g.*, *Williams v. AT&T Corp.*, Civ. No. 15-3543, 2016 WL 915361, at *4 (E.D. La. Mar. 9, 2016) ("AT&T is clearly not a state actor[.]"); *Smith v. Am. Tel. &*

- 3 -

involving another subpoena issued by the Select Committee—the District Court for the District of Columbia held that a private financial institution also was *not* a state actor because "the bank did not engage in state action when it responded to the [Select] Committee's subpoena." *Budowich*, 2022 WL 2274359, at *10. Like the financial institution in *Budowich*, T-Mobile is not and cannot be a state actor merely because it wishes to comply with a subpoena from the Select Committee. Simply put, "it would pervert the … investigatory process to hold that any person compelled to appear before it as a witness by virtue of a subpoena thereby becomes an officer or agent of the United States." *Brown & Williamson Tobacco Corp. v. Wigand*, 913 F. Supp. 530, 533 (W.D. Ky. 1996).

      **3.** Finally, Dr. Ward discusses in detail the recent decision in *Republican National Committee ("RNC") v. Pelosi*, — F. Supp. 3d —, 2022 WL 1294509 (D.D.C. May 1, 2022), *appeal pending*, No. 22-5123 (D.C. Cir.), but that discussion only further confuses the issues. *See* ECF No. 51 at 3-4. In *RNC*, the question posed by the court was, if the Congressional Defendants were immune from suit, could the litigation proceed against the sole remaining defendant (Salesforce), the subpoena recipient? While the court in *RNC* determined that the litigation could proceed—by determining that the RNC had standing to assert its claims against Salesforce, *see RNC*, 2022 WL 1294509, at *11—Salesforce's status had no bearing on the question of whether the Congressional Defendants were immune from suit. Similarly here, T-Mobile's status as a private entity or state actor has no bearing on the issue of whether the Congressional Defendants are immune from suit.

      Because this Court does not have subject matter jurisdiction over the Congressional Defendants, their motion to dismiss should be granted.[2]

---

*Tel. Commc'ns*, Civ. No. 04-954, 2006 WL 2019647, at *8 (D.N.M. Apr. 12, 2006) ("AT & T is not a state actor[.]").

[2] Dr. Ward complains that the Congressional Defendants violated L.R. Civ. 12.1(c) by failing to confer before filing their motion to dismiss under Rule 12(b)(6) for failure to state a claim, and for failing to file the required certification. *See* ECF No. 51 at 5.

- 4 -

## II. The Complaint Fails To State A Claim

**1.** Even if this Court had subject matter jurisdiction, Dr. Ward's Complaint fails to state any claim on which relief can be granted.

Dr. Ward has abandoned her claims that the Select Committee is improperly constituted and has violated House Rules and/or its authorizing resolution, as well as her claims under Arizona law. *See* ECF No. 51. Our memorandum in support of the motion to dismiss explained at length why those claims failed, *see* ECF No. 46 at 7-14, 16, and Dr. Ward has offered no response. Consequently, Congressional Defendants are entitled to judgment on those claims. *See, e.g.*, *Jenkins v. Cnty. of Riverside*, 398 F.3d 1093, 1095 n.4 (9th Cir. 2005) ("[Plaintiff] abandoned her other two claims by not raising them in opposition to the [defendant's] motion for summary judgment."); *Bolbol v. City of Daly City*, 754 F. Supp. 2d 1095, 1115 (N.D. Cal. 2010) ("[P]laintiff fails to address this issue in her opposition brief and apparently concedes that she may not proceed on this claim.").

**2.** Dr. Ward argues that the subpoena to T-Mobile violates her "core First Amendment rights to associate with others for political purposes" and, thus, must be subject to "exacting scrutiny." ECF No. 51 at 6. Dr. Ward also asserts that disclosure of

---

However, Dr. Ward has suffered no prejudice from this oversight. *First*, this case is one of approximately 30 similar cases that have been filed across the country, each challenging subpoenas issued by the Select Committee. In each of those cases where they have responded, the Congressional Defendants have argued that plaintiffs failed to state a claim. In fact, Dr. Ward relies on some of these very cases in her opposition. *See id.* at 4 (citing *Eastman v. Thompson* and *RNC v. Pelosi*). Thus, Dr. Ward had ample knowledge of what was likely to be argued in this case. *Second*, the Congressional Defendants do not make any arguments based on pleading deficiencies in the Complaint that could have been cured in advance through negotiations. *Third*, Dr. Ward has now fully briefed her responses to the Congressional Defendants' arguments. Based on that briefing, it is clear that no curative amendments to Dr. Ward's Complaint were possible. Accordingly, this motion is ripe for adjudication by the Court and should be decided. Should the Court prefer, it can convert the motion into either a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), or a motion for summary judgment under Rule 56(c). Alternatively, should the Court require that the certification be filed, the Congressional Defendants are willing to meet and confer with Dr. Ward and file a revised motion with the required certification.

- 5 -

her telephone records implicates not only her rights, but also the "political associational rights of the entire AZGOP." *Id.* at 7. Her arguments are wrong.

In the context of a Congressional subpoena, the Supreme Court has held that "the protections of the First Amendment … do not afford a witness the right to resist inquiry in all circumstances." *Barenblatt v. United States*, 360 U.S. 109, 126 (1959). Rather, "[t]o determine whether the First Amendment bars the Select Committee's access to information it seeks through a duly-authorized subpoena depends on a balancing of 'the competing private and public interests at stake in the particular circumstances shown.'" ECF No. 160 at 55-56, *Eastman v. Thompson*, No. 8:22-cv-00099 (C.D. Cal. Mar. 2, 2022) (quoting *Barenblatt*, 360 U.S. at 126). The Court noted only the "relevancy" of the questions that the Congressional subcommittee posed. *See Barenblatt*, 360 U.S. at 134.

Here, the Select Committee's interest is compelling. As the D.C. Circuit has held, the Select Committee's interest in studying the January 6th attack and proposing remedial measures is "vital" and "uniquely weighty." *Trump v. Thompson*, 20 F.4th 10, 17, 35 (D.C. Cir. 2021). Moreover, both the Supreme Court and lower courts have recognized that some government interests, especially those involving the "free functioning of our national institutions" are "sufficiently important to outweigh the possibility of infringement." *Buckley v. Valeo*, 424 U.S. 1, 66 (1976); *see also Senate Permanent Subcomm. v. Ferrer*, 199 F. Supp. 3d 125, 143 (D.D.C. 2016) (holding that Congressional investigation interests "substantially outweigh[ed]" any intrusion on subpoena recipient's "incidental" First Amendment rights), *vacated as moot*, 856 F.3d 1080 (D.C. Cir. 2017).

There can be no greater interest than investigating the first attempt to obstruct the peaceful transfer of power of its kind in our Nation's history. The Select Committee is charged with examining the deadliest domestic attack on the Capitol "in the history of the United States" to make "legislative recommendations" to prevent future acts of such violence. *Trump v. Thompson*, 20 F.4th at 16, 35. Accordingly, the Select Committee's interest in obtaining call record data from T-Mobile necessarily involves the "free

functioning of our national institutions" and substantially outweighs any harm identified by Dr. Ward.  *See Buckley*, 424 U.S. at 66.

Dr. Ward also contends that the subpoena is not narrowly tailored, but she cites no case (and the Select Committee is not aware of any) in which a court has applied this standard to a Congressional subpoena.  Rather, courts that have examined the scope of a legislative subpoena "only inquire as to whether the documents sought by the subpoena are 'not plainly incompetent or irrelevant to any lawful purpose [of the Committee] in the discharge of [its] duties.'"  *Bean LLC v. John Doe Bank*, 291 F. Supp. 3d 34, 44 (D.D.C. 2018) (quoting *McPhaul v. United States*, 364 U.S. 372, 381 (1960)).  Regardless, the subpoena to T-Mobile meets the standard suggested by Dr. Ward because it seeks only call data (not content) and is narrowly tailored to the date rage of November 1, 2020, just prior to Election Day, through January 31, 2021.  *See* ECF 1-1 at 3.  That date range was specifically designed to obtain information referring and relating to activities surrounding the 2020 Presidential election, including false assertions that the election had been stolen and actions related to the appointment of an alternative slate of Electors from Arizona; activities that directly concerned the January 6th attack.

Furthermore, the subpoena to T-Mobile here is far more narrowly tailored than in the main case Dr. Ward relies upon, *Americans for Prosperity Foundation v. Bonta*, 141 S. Ct. 2373 (2021).  *See* ECF No. 51 at 6.  In *Bonta*, the State of California mandated disclosure to the Attorney General of "sensitive donor information from tens of thousands of charities each year, even though that information will become relevant in only a small number of cases involving filed complaints," and there were "multiple alternative mechanisms through which the Attorney General can obtain [such] information after initiating an investigation." 141 S. Ct. at 2387.  In *Bonta*, the Court did not assess the application of the First Amendment to a Congressional investigation, but rather was concerned with the First Amendment implications of permanent and wide-ranging administrative policies and other regulatory requirements.  In this case, unlike in *Bonta*, the Select Committee is not seeking sensitive donor information, nor are there any

1    alternative mechanisms by which it could obtain the information about Dr. Ward's specific
2    contacts with the same level of accuracy during the period identified in the subpoena.
3           Finally, Dr. Ward avers that the production of records pursuant to the subpoena will
4    "inevitably lead to the questioning of, and further subpoenas issued to, the thousands of
5    Republicans in contact with Plaintiffs," and will lead members of the AZGOP to "feel that
6    every time they communicate with party leadership, they risk having those
7    communications disclosed to law enforcement followed by a knock on the door (or worse)
8    from federal investigators." ECF No. 51 at 10. Not only is this argument purely
9    speculative—Dr. Ward has provided no evidence to support such a chilling effect—but it
10   is also the very type of "subjective fear of future reprisal[]" that the Ninth Circuit has held
11   "insufficient [for a] showing of infringement of associational rights." *Brock v. Loc. 375,*
12   *Plumbers Int'l Union of Am., AFL-CIO*, 860 F.2d 346, 350 n.1 (9th Cir. 1988).
13          **3.** Dr. Ward next argues that HIPAA applies to this subpoena because telephone
14   numbers can be used to identify Dr. Ward's patients and, therefore, those numbers
15   constitute protected health information ("PHI"). *See* ECF No. 51 at 12-13. However, in
16   focusing on only one part of the operative statute, Dr. Ward ignores the other requirements
17   for information to be considered PHI. The relevant statute provides that, to be PHI,
18   information must satisfy three requirements: (i) be "created or received by a health care
19   provider, health plan, employer, or health care clearinghouse; *and*" (ii) "relate[] to the past,
20   present, or future physical or mental health or condition of an individual … *and*," (iii)
21   either "identif[y] the individual;" or provide a "reasonable basis to believe that the
22   information can be used to identify the individual." 42 U.S.C. § 1320d(6) (emphasis
23   added). Even assuming the data at issue here satisfies the second and third conditions, it
24   does not and cannot satisfy the first. The data sought by the subpoena was not created or
25   received by any of the types of entities that make it PHI. Rather, it was created and
26   received by T-Mobile, a telecommunications carrier, who, as explained in our motion to
27   dismiss, is neither a "health care provider, health plan employer, or health care
28   clearinghouse." *See* ECF No. 46 at 17. The fact that Dr. Ward used the same cellular

- 8 -

phone for her medical patients as she did for her political activity does not make her either the creator or recipient of the call data records sought by the subpoena.

Next, Dr. Ward confusingly asserts that HIPAA applies because T-Mobile, by virtue of being a "state actor in this context," is a "covered entity" under HIPAA. ECF No. 51 at 16. Dr. Ward goes on to state that "whether [T-Mobile] is a 'covered entity' is irrelevant … And, even were T-Mobile not a state actor, litigants may still assert their privileges in situations where subpoenas have been served to non-parties." *Id.* Finally, Dr. Ward asserts that "while the Committee correctly identifies itself as the party seeking the information, it fails to properly identify Plaintiffs as the true parties from whom the information is sought. Because Plaintiffs **are** a covered entity, HIPAA applies." *Id.* (emphasis in original).

As best Congressional Defendants can tell, Dr. Ward's argument appears to be that regardless of how the Court views the parties, HIPAA applies. In other words, if T-Mobile is a state actor, HIPAA applies. If T-Mobile is a private entity, HIPAA applies. And, because it is Dr. Ward's information being sought, HIPPA applies. None of these positions is correct. As explained in our motion to dismiss, HIPAA's disclosure restrictions do not apply to this subpoena because neither the entity from which the records were sought—T-Mobile, a telecommunications carrier—nor the Select Committee is within HIPAA's definition of "covered entity." *See* 45 C.F.R. § 160.103. The subpoena was issued to T-Mobile, seeking T-Mobile's data. Dr. Ward's status is irrelevant because the subpoena was not issued to her by the Select Committee.

**4.** Finally, Dr. Ward argues that the Select Committee has only offered "at best, vague assertions" to support its subpoena that fall short of the requirement to establish a valid legislative purpose. *See* ECF 51 at 17. As described in our motion to dismiss, House Resolution 503 established the Select Committee "[t]o investigate and report upon the facts, circumstances, and causes relating to the January 6, 2021, domestic terrorist attack upon the United States Capitol Complex ... and relating to the interference with the peaceful transfer of power." H. Res. 503 § 3(1). The Select Committee is further

authorized to recommend "corrective measures," including "changes in law, policy, procedures, rules, or regulations that could be taken." *Id.* § 4(c).  The latter task is dependent on the former: only with a proper understanding of the "facts, circumstances, and causes" of the attack and the interference can Congress appropriately recommend measures to prevent its recurrence.  *Id.* § 4(a)(1).

The motion to dismiss detailed Dr. Ward's extensive participation in events relating to interference with the peaceful transfer of power on January 6th, 2021.  *See* ECF 46 at 2-3.  Specifically, by her own admission, she and other Trump electors met and sent a set of unauthorized Electoral College votes to Congress, and repeatedly maintained, even in the wake of the January 6th attack on the Capitol, that the slate of electors she helped send were the "rightful & true Presidential electors for 2020."  *Id.* at 3.  Understanding the full scope and reach of her connections to others who participated in or planned events leading up to, and on, January 6th therefore serves a valid legislative purpose.  *See, e.g.*, *McPhaul*, 364 U.S. at 381 (rejecting challenge to subpoena where "the records called for by the subpoena were not plainly incompetent or irrelevant to any lawful purpose (of the Subcommittee) in the discharge of (its) duties" (internal quotation marks and citation omitted)).

Contrary to Dr. Ward's argument, the Select Committee has identified with the requisite clarity the need for the information sought and how it relates to its investigation.  *See* ECF No. 46 at 3-4.  As Judge Kelly held in *RNC*, "the Select Committee did not have to 'declare in advance' what legislation it may recommend based on the materials at issue to show that the subpoena has a 'legitimate object.'" 2022 WL 1294509, at *17 (internal citations omitted); *see also Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 509 (1975) ("The very nature of the investigative function—like any research—is that it takes the searchers up some 'blind alleys' and into nonproductive enterprises.  To be a valid legislative inquiry there need be no predictable end result.").

# CONCLUSION

For all the reasons stated above, the Complaint should be dismissed.

Respectfully submitted,

*/s/ Douglas N. Letter*
DOUGLAS N. LETTER
   *General Counsel*
TODD B. TATELMAN
   *Principal Deputy General Counsel*
ERIC R. COLUMBUS
   *Special Litigation Counsel*

OFFICE OF GENERAL COUNSEL
U.S. HOUSE OF REPRESENTATIVES
5140 O'Neill House Office Building
Washington, D.C. 20515
Telephone: (202) 225-9700
Douglas.Letter@mail.house.gov

August 29, 2022

**CERTIFICATE OF SERVICE**

I hereby certify that on August 29, 2022, I caused the foregoing document to be filed via the CM/ECF system for the U.S. District Court for the District of Arizona, which I understand caused a copy to be served on all registered parties.

*/s/ Douglas N. Letter*
Douglas N. Letter