1    **WO**

2

3

4

5

6              **IN THE UNITED STATES DISTRICT COURT**

7                    **FOR THE DISTRICT OF ARIZONA**

8

9    Michael P Ward, et al.,                    No. CV-22-08015-PCT-DJH

10                   Plaintiffs,                 **ORDER**

11   v.

12   Bennie G Thompson, et al.,

13                   Defendants.

14

15         Pending before the Court is Plaintiffs Michael P. Ward and Kelli Ward's

16   ("Plaintiffs") Motion to Quash a Congressional Subpoena *Duces Tecum* issued by the

17   United States House of Representatives Select Committee ("Select Committee") in

18   furtherance of its investigation into the January 6th attack on the United States Capitol

19   (Doc. 2).  Defendant T-Mobile USA Inc. filed a Response (Doc. 48), and Plaintiffs filed a

20   Reply (Doc. 52).

21         Also pending is Defendants Bennie G. Thompson and the Select Committee's

22   ("Congressional Defendants") Motion to Dismiss, which includes arguments responsive to

23   those made in Plaintiffs' Motion to Quash (Doc. 46).[1]  Plaintiffs filed a Response in

24   ────────────────

25   [1] Plaintiffs note the Congressional Defendants failed to comply with LRCiv 12.1(c).
     (Doc. 51 at 5).  The purpose of the meet and confer is to cure alleged deficiencies in the
26   Complaint. Plaintiffs say they would have added T-Mobile as a Defendant to the remaining
     Counts had they been notified in advance of the alleged deficiencies. (*Id.* at 4 n.3). The
27   Court, however, finds this proposed amendment would not resolve the subject matter
     jurisdiction deficiencies alleged in the Motion to Dismiss. *See Bonin v. Calderon*, 59 F.3d
28   815, 845 (9th Cir. 1995) ("Futility of amendment can, by itself, justify the denial of a
     motion for leave to amend.").  Under these circumstances, the Court will excuse
     Defendants' failure to meet and confer.

1   Opposition (Doc. 51), and Congressional Defendants filed a Reply (Doc. 53).[2]

2   **I.      Background**[3]

3          This case arises out of the Select Committee's investigation into the January 6, 2021,

4   attack on the United States Capitol.

5          The parties include three Plaintiffs: Dr. Kelli Ward ("Ward"), her husband Dr.

6   Michael Ward ("M. Ward"), both of whom are practicing physicians, and Mole Medical

7   Services, PC ("Mole Medical"), an Arizona Professional Corporation (Doc. 1 at ¶¶ 6–8).

8   Plaintiff Kelli Ward is Chair of the Arizona Republican party and was a Republican

9   nominee for Arizona's presidential electors for the 2020 General Election.  (Docs. 1, 1-2

10   at ¶¶ 7, 19).  Three Defendants are named:  Bennie G. Thompson, a Representative from

11   Mississippi and Chairman of the Select Committee ("Thompson"), the Select Committee,

12   and T-Mobile USA, Inc. ("T-Mobile") (*Id.* at ¶¶ 9–11).

13          On June 30, 2021, the U.S. House of Representatives adopted House Resolution

14   503, which established the Select Committee and tasked the Committee with

15   "investigat[ing] and reporting upon the facts, circumstances, and causes relating to the

16   January 6, 2021, domestic terrorist attack upon the United States Capitol Complex . . . and

17   relating to the interference with the peaceful transfer of power."  H.R. Res. 503 § 3(1).  The

18   Select Committee is authorized to recommend "corrective measures," including "changes

19   in law, policy, procedures, rules, or regulations that could be taken."  *Id.* § 4(c).

20   [2] On September 7, 2022, Plaintiffs filed a Notice of Supplemental Authority regarding the
21   status of the Republican National Committee's ("RNC") appeal of a D.C. District Court's
     dismissal of the RNC's objections relating to a subpoena issued by the Select Committee
22   to one of the RNC's vendors.  (Doc. 54 citing *Republican National Committee v. Pelosi*,
     2022 WL 1294509 (D.D.C. May 1, 2022)).  After the parties briefed the issues on appeal,
23   but before oral argument, the Select Committee withdrew the subpoena at issue.  (*Id.*)  On
     September 16, 2022, the D.C. Circuit Court dismissed the appeal and vacated the district
24   court's judgment. *Republican Nat'l Comm. v. Pelosi, et al.*, 2022 WL 4349778, at *1 (D.C.
     Cir. Sept. 16, 2022).  The D.C. Circuit Court found vacatur necessary because by
25   withdrawing the subpoena, the Committee precluded the appellate court from reviewing
     "the important and unsettled constitutional questions that the appeal would have
26   presented."  *Id.*  As a result of that recent order, the D.C. district court decision holds no
     persuasive or precedential value.

27   [3] Unless otherwise noted, these facts are taken from Plaintiffs' Complaint (Doc. 1).  The
     Court will assume the Complaint's factual allegations are true, as it must in evaluating a
28   motion to dismiss. *See Lee v. City of L.A.*, 250 F.3d 668, 679 (9th Cir. 2001).

On or around January 25, 2022, Mole Medical received a letter from T-Mobile informing Mole Medical that T-Mobile had received a subpoena *duces tecum* from the Select Committee to investigate the January 6th attack.  (Doc. 1 at ¶ 1).  The subpoena required T-Mobile to produce information related to account 4220, including incoming and outgoing phone call records, their duration and associated phone numbers, and information about the callers.[4]  (*Id.* at ¶ 2).  The subpoena seeks information from November 1, 2020, to January 31, 2021, and required production by February 4, 2022.[5]  (*Id.*) The subpoena states "[t]his schedule does not call for the production of the content of any communications or location information."  (Doc. 1-1 at 3).  The information to be produced, as set forth in the subpoena, is as follows:

> 1. Subscriber Information: All subscriber information for the Phone Number, including:
> > a. Name, subscriber name, physical address, billing address, e-mail address, and any other address and contact information;
> > b. All authorized users on the associated account;
> > c. All phone numbers associated with the account;
> > d. Length of service (including start date) and types of service utilized;
> > e. Telephone or instrument numbers (including MAC addresses), Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN") Mobile Equipment Identifier ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), International Mobile Subscriber Identifiers ("MSI"), or International Mobile Equipment Identities ("IMEI") associated with the accounts;
> > f. Activation date and termination date of each device associated with the account;
> > g. Any and all number and/or account number changes prior to and after the account was activated;
> > h. Other subscriber numbers or identities (including temporarily

---

[4] Plaintiff Ward notes three other lines are associated with the 4220 account: one belonging to her husband and the other two belonging to her children.  (Doc. 1-2 at ¶ 17).  In their Motion to Dismiss, Congressional Defendants represent that "to the extent call detail records for [Dr. Michael Ward and his two children's] phone numbers are considered covered by the Subpoena, the Select Committee has voluntarily withdrawn such a demand and has notified T-Mobile accordingly."  (Doc. 46 at 11 n.8).

[5] The parties agreed to extend the production date several times.  (Docs. 26, 31, 33, 37, 39, 43, 50).

1

2

assigned network addresses and registration Internet Protocol ("IP") addresses); and

3

4

5

6

2. Connection Records and Records of Session Times and Durations: All call, message (SMS & MMS), Internet Protocol ("IP*"), and data-connection detail records associated with the Phone Numbers, including all phone numbers, IP addresses, or devices that communicated with the Phone Number via delivered and undelivered inbound, outbound, and routed calls, messages, voicemail, and data connections.

7

8

(*Id.* at 3).

9

10

11

12

Plaintiffs claim production of the information sought in the subpoena would violate their rights under the First and Fourteenth Amendments of the U.S. Constitution. (*Id.* at ¶ 4). Plaintiffs therefore seek declaratory judgment and injunctive relief, and ask this Court to quash the subpoena and enjoin Defendants from enforcing it or producing any documents in compliance of its demands. (*Id.* at ¶ 5).

13

14

15

16

17

18

19

20

21

Plaintiffs' Complaint contains four causes of action. (*Id.* at 10–19). Count I, against all Defendants, seeks declaratory judgment and injunctive relief, alleging the subpoena is an *ultra vires* action by the Select Committee and thus invalid; Count II, against Congressional Defendants, alleges a violation of the First Amendment; Count III, against Congressional Defendants, alleges a violation of state and federal statutory privilege protections; and Count IV, against Congressional Defendants, alleges a violation of the Rules of the House of Representatives. (*Id.*) Plaintiffs assert no "wrongdoing on the part T-Mobile" and note "they are named herein only insofar as is necessary to ensure that they will be bound by this Court's judgment." (*Id.* at ¶ 11).

22

23

24

25

26

27

Congressional Defendants move to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(1) and (6), arguing the Court lacks subject matter jurisdiction to consider Plaintiffs' claims because sovereign immunity bars those claims. (Doc. 46 at 12). Congressional Defendants further argue the Complaint fails to state a claim upon which relief can be granted. (*Id.* at 13).

## II.     Legal Standards

28

Under Federal Rule of Civil Procedure ("Rule") 12(b)(1), a defendant may seek to

1    dismiss a complaint for lack of jurisdiction over the subject matter.  A federal court is one

2    of limited jurisdiction.  *See Gould v. Mut. Life Ins. Co. v. New York*, 790 F.2d 769, 774 (9th

3    Cir. 1986).  It therefore cannot reach the merits of any dispute until it confirms its own

4    subject matter jurisdiction.  *See Steel Co. v. Citizens for a Better Environ.*, 523 U.S. 83, 95

5    (1998).  Plaintiff, as the party seeking to invoke jurisdiction, has the burden of establishing

6    that jurisdiction exists.  *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377

7    (1994).

8            A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a claim.  *Cook*

9    *v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011).  Complaints must make a short and plain

10   statement showing that the pleader is entitled to relief for its claims.  Fed. R. Civ. P. 8(a)(2).

11   This standard does not require "'detailed factual allegations,' but it demands more than an

12   unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S.

13   662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  There

14   must be "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  While

15   courts do not generally require "heightened fact pleading of specifics," a plaintiff must

16   allege facts sufficient to "raise a right to relief above the speculative level."  *See Twombly*,

17   550 U.S. at 555.  A complaint must "state a claim to relief that is plausible on its face."  *Id.*

18   at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows

19   the court to draw the reasonable inference that the defendant is liable for the misconduct

20   alleged."  *Iqbal*, 556 U.S. at 678.  In addition, "[d]etermining whether a complaint states a

21   plausible claim for relief will . . . be a context-specific task that requires the reviewing court

22   to draw on its judicial experience and common sense."  *Id.* at 679.

23           Dismissal of a complaint for failure to state a claim can be based on either the "lack

24   of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable

25   legal theory."  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  In

26   reviewing a motion to dismiss, "all factual allegations set forth in the complaint 'are taken

27   as true and construed in the light most favorable to the plaintiffs.'"  *Lee v. City of L.A.*, 250

28   F.3d 668, 679 (9th Cir. 2001) (quoting *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140

1    (9th Cir. 1996)).  But courts are not required "to accept as true a legal conclusion couched

2    as a factual allegation."  *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S.

3    265, 286 (1986)).

4    **III.   Discussion**

5            Congressional Defendants move to dismiss Plaintiffs' Complaint under Rules

6    12(b)(1) and 12(b)(6), arguing the Court lacks subject matter jurisdiction to consider

7    Plaintiffs' claims under the doctrine of sovereign immunity and because the Complaint

8    fails to state a claim upon which relief can be granted.  (Doc. 46 at 12–13).

9            **A.  Subject Matter Jurisdiction**

10           The Court must dismiss claims and parties over which it lacks subject matter

11   jurisdiction.  *See* Fed. R. Civ. P. 12(b)(1).  The Court must therefore address this issue first.

12           **i.    Sovereign Immunity**

13           "[T]he United States may not be sued without its consent and . . . the existence of

14   consent is a prerequisite for [subject matter] jurisdiction."  *United States v. Mitchell*, 463

15   U.S. 206, 212 (1983).  Consent must be "unequivocally expressed" for Congress to waive

16   its sovereign immunity.  *United States v. Nordic Village, Inc.*, 503 U.S. 30, 33 (1992).

17   Sovereign immunity "forecloses . . . claims against the House of Representatives and

18   Senate as institutions, and Representative[s] . . . and Senator[s] . . .  as individuals acting

19   in their official capacities."  *Rockefeller v. Bingaman*, 234 F. App'x 852, 855 (10th Cir.

20   2007) (internal citations omitted).

21           The Supreme Court, however, has recognized two narrow exceptions to the general

22   bar against suits seeking relief from the United States.  *See Wyoming v. United States*, 279

23   F.3d 1214, 1225 (10th Cir. 2002).  "A court may regard a government officer's conduct as

24   so 'illegal' as to permit a suit for specific relief against the officer as an individual if (1)

25   the conduct is not within the officer's statutory powers or, (2) those powers, or their

26   exercise in the particular case, are unconstitutional."  *Id.* (citing *Larson v. Domestic &*

27   *Foreign Commerce Corp.*, 337 U.S. 682, 702 (1949)).

28           Here, Plaintiffs sue Defendant Thompson in his official capacity, and they sue the

1   Select Committee as a committee of the House of Representatives.  (Doc. 1 at ¶¶ 9, 10).

2   Plaintiffs fail to identify a waiver that is "unequivocally expressed" and thus sovereign

3   immunity plainly bars Plaintiffs' claims against the Select Committee.  *Nordic Vill. Inc.*,

4   503 U.S. at 33.  Likewise, an official capacity suit seeking injunctive relief against a federal

5   employee is "treated as a suit against a government entity" and therefore Defendant

6   Thompson, acting in his official capacity, is protected by Congress's sovereign immunity.

7   *Id.* (citing to *Travelers Ins. Co. v. SCM Corp.*, 600 F. Supp. 493, 497 (D.D.C. Dec. 21,

8   1984) (holding that "[i]t is clear that a claim against a federal employee in his or her

9   'official capacity' is in effect a claim against the government.  The sovereign immunity

10  doctrine cannot be evaded by changing the label on the claims or the parties."); *see also E.*

11  *V. v. Robinson*, 906 F.3d 1082, 1094 (9th Cir. 2018) (holding where a suit is "in substance"

12  a suit against the government, a court has no jurisdiction in the absence of consent)).  The

13  Court accordingly finds no waiver here.  Unless Plaintiffs can show one of the narrow

14  exceptions in which sovereign immunity does not apply to government conduct, Plaintiffs'

15  claims are barred.

### ii.   Exceptions to Sovereign Immunity

17  Finding no applicable waiver, Plaintiffs seek to invoke the first exception to

18  sovereign immunity by arguing the actions taken by the Select Committee are *ultra vires*

19  because the subpoena does not relate to a legitimate Congressional task and is in violation

20  of House Rules.  (Doc. 2 at 13).  Plaintiffs further contend the subpoena violates their

21  associational rights under the First Amendment.  (Doc. 2 at 11–13).  Plaintiffs' arguments

22  are unpersuasive.

### a.   Valid Legislative Purpose

24  The Court's role is limited in reviewing Congress's investigative power.  Although

25  Congress has no enumerated investigative power, the Supreme Court has recognized that

26  each house of Congress has the power "to secure needed information" to legislate.  *See*

27  *Trump v. Mazars USA, LLP*, 140 S. Ct. 2019, 2031 (2020) (internal citation omitted).

28  Congressional subpoenas, issued in furtherance of Congress's investigative power, must

1    have a "valid legislative purpose." *Id.* at 2031.  This means the subpoena must be "related

2    to, and in furtherance of, a legitimate task of the Congress" such as pursuing a "subject on

3    which legislation could be had."  *Id.* at 2033.  An investigation conducted to "expose for

4    the sake of exposure" is therefore "indefensible."  *Id.* at 2032.

5            Congressional committees may execute this investigative power when a relevant

6    institution delegates it to them.  *See McGrain v. Daugherty*, 273 U.S. 135, 177 (1927).  To

7    issue a valid subpoena, however, a committee must conform to the resolution that

8    established its investigative powers.  *See Exxon Corp. v. FTC*, 589 F.2d 582 (D.C. Cir.

9    1978).   A committee's conformity to its authorizing resolution or governing rules is

10   "political in nature" and therefore "nonjusticiable."  *Metzenbaum v. Fed. Energy Reg.*

11   *Comm'n*, 675 F.2d 1282, 1287 (D.C. Cir. 1982).

12           The Court's review of whether an investigative act has a valid legislative purpose is

13   deferential.  *McGrain*, 273 U.S. at 177–80.  Indeed, the "purpose need not be clearly

14   articulated" and the "legitimate legislative purpose bar is a low one."  *Id.*   The Court must

15   "presume that the action" has a "legitimate object" if "it is capable of being so construed."

16   *Id.*  When the Court considers the valid legislative purpose in the scope of a subpoena, "the

17   Court's review is limited to 'whether the documents sought . . . are not plainly incompetent

18   or irrelevant to any lawful purpose' of the committee 'in the discharge of [its] duties.'"

19   *Senate Select Comm. on Ethics v. Packwood*, 845 F. Supp. 17, 20–21 (D.D.C. 1994)

20   (quoting *McPhaul v. United States*, 364 U.S. 372, 381 (1960)).  Thus, for the Court to find

21   a subpoena invalid based on an improper purpose, the subpoena must be rooted in exposing

22   for exposure's sake.  *Mazars*, 140 S. Ct. at 2032.

23           Plaintiffs argue the Congressional Defendants' subpoena must be quashed because

24   it is an *ultra vires* action that does not relate to a legitimate Congressional task.  (*Id.* at 13).

25   To support this claim, Plaintiffs contend the subpoena (1) does not concern a subject on

26   which legislation may be had, (2) does not comport with the Committee's enabling

27   resolution because it was issued in aid of a criminal investigation or for the purpose of

28   harassing and threatening Plaintiffs, (3) and is overboard.  (Doc. 2 at 13).

1    Notably, the D.C. Circuit Court in *Trump v. Thompson* rejected similar arguments

2    as to the legitimacy of the Select Committee.  *See Trump v. Thompson*, 20 F.4th 10, 41

3    (D.C. Cir. 2021), cert. denied, ⎯⎯ U.S. ⎯⎯, 142 S. Ct. 1350, 212 (2022) (finding the

4    Select Committee's investigation into the January 6th attack on the Capitol has a "valid

5    legislative purpose" and the Committee's inquiry contained in the authorizing resolution

6    concerned "a subject on which legislation could be had.") (quoting *Mazars*, 140 S. Ct. at

7    2031–32)).  This Court does as well.  House Resolution 503 plainly authorizes the Select

8    Committee to propose legislative measures based on its findings.  H.R. Res. 503 § 4(a)(3).

9    Indeed, the Select Committee's purpose is to "issue a final report to the House containing

10   such findings, conclusions, and recommendations" for such "changes in law, policy,

11   procedures, rules, or regulations" as the Committee "may deem necessary[.]" *Id.* §

12   4(a)(3),(c).  The Court therefore finds the Select Committee's investigation into the January

13   6th attack on the Capitol has a "valid legislation purpose."  *Trump*, 20 F.4th at 41.

14   To impeach the Select Committee's otherwise valid legislative purpose Plaintiffs

15   must overcome a "formidable bar."  *Comm. on Ways & Means, U.S. House of*

16   *Representatives v. U.S. Dep't of the Treasury*, 575 F. Supp. 3d 53, 65 (D.D.C. Dec. 14,

17   2021) (finding that "while Congress need clear only a low bar to establish a valid purpose,

18   [plaintiffs] face a formidable bar to impeach that purpose").  Plaintiffs argue Deputy

19   Attorney General Monaco stated the Select Committee's investigation concerned whether

20   Plaintiffs "committed a crime by sending fake Electoral College certifications that declared

21   former President Donald Trump the winner of states he lost." (Doc. 2 at 14).  Plaintiffs say

22   it is "public knowledge that Republicans sent a competing slate of electors for Arizona"

23   and that "no investigation is necessary to confirm this," thus the subpoena was issued to

24   harass them for exercising their First Amendment rights.  (*Id.*)

25   The Court finds this evidence falls short of the formidable bar Plaintiffs must

26   overcome to show an invalid legislative purpose.  In *Watkins*, a defendant refused to answer

27   questions before a House committee about whether certain individuals were members of

28   the Communist Party because he doubted the relevance of those questions to the

1   committee's work.  *Watkins v. United States*, 354 U.S. 185 (1957).  The Court found the

2   defendant had "marshalled an impressive array of evidence that" exposure of Communists

3   motivated the committee.  *Id.* at 199.  This evidence included an official committee

4   publication which stated the committee "believed itself" called "to expose people and

5   organizations attempting to destroy this country."  *Id.*  Even considering the "impressive

6   array of evidence," the Court found it did not invalidate the committee's inquiry.  *Id.* at

7   200.  "[A] solution to our problem is not to be found in testing the motives of committee

8   members."  *Id.*  "Their motives alone would not vitiate an investigation . . . if that

9   assembly's legislative purpose is being served."  *Id.*

10         Plaintiffs' evidence of an illegitimate purpose is nowhere close to the evidence in

11   *Watkins*.  First, Deputy Attorney General Monaco is not a member of the Select Committee,

12   and it is unclear to the Court how her comments implicate the Committee's motives.

13   Second, Plaintiffs appear to argue Deputy Attorney General Monaco's statement shows the

14   Select Committee's purpose is motivated by a criminal investigation.  The Court is

15   unpersuaded.  Indeed, the D.C. Circuit rejected that the Select Committee has an "improper

16   law enforcement purpose," finding "[t]he mere prospect that misconduct might be exposed

17   does not make the Committee's request prosecutorial" and that "[m]issteps and

18   misbehavior are common fodder for legislation."  *Trump*, 20 F.4th at 42.  The Court

19   therefore rejects Plaintiffs' claims that the Select Committee's subpoena was issued to

20   harass them or is otherwise for an improper law enforcement purpose.  *See Barenblatt v.*

21   *United States*, 360 U.S. 109, 132 (1959) (finding that if "Congress acts in pursuance of its

22   constitutional power, the Judiciary lacks authority to intervene on the basis of the motives

23   which spurred the exercise of that power.").

24         Last, Plaintiffs argue the subpoena is overbroad because it does not set forth with

25   "undisputable clarity" how its request for data relates to an authorized and lawful purpose

26   of the Committee's investigation.  (Doc. 2 at 14–15).  But the Court's role is limited to

27   whether the requested records "are not plainly incompetent or irrelevant to any lawful

28   purpose' of the committee 'in the discharge of [its] duties.'"  *Packwood*, 845 F. Supp. at

1   20–21 (quoting *McPhaul v. United States*, 364 U.S. 372, 381 (1960).   The Select

2   Committee's information request relates to phone calls records from November 1, 2020, to

3   January 31, 2021, from an account associated with a Republican nominee to serve as

4   elector for former President Trump.  (Doc. 1-1 at 3; Doc. 1-2 at ¶ 19).  That three-month

5   period is plainly relevant to its investigation into the causes of the January 6th attack.  The

6   Court therefore has little doubt concluding these records may aid the Select Committee's

7   valid legislative purpose.   *McGrain*, 273 U.S. at 177.

8                     **b.    House of Representatives Rule Violations**

9        Plaintiffs also allege the Select Committee lacks authorization because it has only

10  nine members and the authorizing resolution states that the Speaker shall appoint thirteen

11  members. (Doc. 1 at ¶ 81).  It is undisputed that the composition of the Select Committee

12  includes nine members.

13       The Rulemaking Clause of Article I, Section 5 of the Constitution "reserves to each

14  House of the Congress the authority to make its own rules," and a court's different

15  interpretation of a congressional rule is tantamount to "*making* the Rules—a power that the

16  Rulemaking Clause reserves to each House alone." *Barker v. Conroy*, 921 F.3d 1118, 1130

17  (D.C. Cir. 2019) (emphasis in original) (internal citation omitted).   The Court may

18  intervene only if doing so "requires no resolution of ambiguities." *See United States v.*

19  *Durenberger*, 48 F.3d 1239, 1244 (D.C. Cir. 1995).  A "sufficiently ambiguous House

20  Rule," however, "is non-justiciable." *United States v. Rostenkowski*, 59 F.3d 1291, 1306

21  (D.C. Cir. 1995).  Further, the Court "must give great weight to the [House's] present

22  construction of its own rules." *See United States v. Smith*, 286 U.S. 6, 33 (1932).  Relevant

23  here, House Resolution 503 states that "[t]he Speaker shall appoint 13 Members to the

24  Select Committee, 5 of whom shall be appointed after consultation with the minority

25  leader." H. Res. 503 § 2(a).

26       The Court rejects Plaintiffs' argument that the subpoena was unauthorized because

27  it was issued by nine members of the Select Committee and will defer to the House's

28

1  "construction of its own rules."[6]  *Smith*, 286 U.S. at 33.  The House has already empowered

2  the Select Committee to act under its authorizing resolution, despite its composition.

3  Indeed, the House adopted the Select Committee's recommendations to find witnesses in

4  contempt of Congress for refusals to comply with subpoenas and thus its composition has

5  been implicitly ratified by the body that created it.  *See* 167 Cong. Rec. H5748, H5768–69

6  (Oct. 21, 2021) (Steve Bannon); 167 Cong. Rec. H7667, H7794, H7814–15 (Dec. 14, 2021)

7  (Mark Meadows).  Here, Plaintiffs ask this Court to interpret the resolution in a different

8  manner than the House's own reading of the authorizing resolution.  But the Rulemaking

9  Clause reserves this power to the House and the Court will not interpret the resolution in a

10  manner contrary to the authorizing body.  *Barker*, 921 F.3d at 1130.

11  ### c.   First Amendment Associational Rights

12  Although not expressly stated, Plaintiffs appear to argue the issuance of the

13  subpoena is an unconstitutional act that does not bar this suit under sovereign immunity

14  principles.  To that end, Plaintiffs argue the subpoena violates their associational rights

15  under the First Amendment.   (Doc. 2 at 11).  Plaintiffs contend the Court must apply

16  "exacting scrutiny" to the subpoena because "political associational rights are at stake."

17  (*Id.* at 12).  Plaintiffs further claim the subpoena provides the Select Committee with "the

18  means to chill the First Amendment associational rights not just of the [Plaintiffs] but of

19  the entire Republican Party in Arizona.  (*Id.* at 13).

20  To escape lawful government investigation, plaintiffs must demonstrate a "prima

21  facie showing of arguable first amendment infringement . . . ."  *Brock v. Loc. 375, Plumbers*

22  *Int'l Union of Am., AFL-CIO*, 860 F.2d 346, 350 (9th Cir. 1988).  This requires plaintiffs

23  show that "enforcement of the subpoena will result in (1) harassment, membership

24  withdrawal, or discouragement of new members, or (2) other consequences which

25  objectively suggest an impact on, or 'chilling' of, the members' associational rights."  *Id.*

26  Plaintiffs must provide "objective and articulable facts, which go beyond broad allegations

27
28
_____
[6] Plaintiffs' quorum and delegation of authority allegations, contained under the same Count in their Complaint, are also based on the Select Committee's nine-member composition and the Court therefore rejects these arguments for the same reasons. (Doc. 1 at ¶¶ 85–91).

1    or subjective fears." *Id.* at n1.   A "subjective fear of future reprisals is an insufficient

2    showing of infringement of associational rights." *Id.*  "The existence of a prima facie case

3    turns not on the type of information sought, but on whether disclosure of the information

4    will have a deterrent effect on the exercise of protected activities."   *Perry v.*

5    *Schwarzenegger*, 591 F.3d 1147, 1162 (9th Cir. 2010).

6          Plaintiffs argue their production of records "risks" those people who called or texted

7    Plaintiff Kelli Ward to be contacted by the Committee and to "become implicated in the

8    largest criminal investigation in U.S. history." (Doc. 51 at 9).  Having already found that

9    the subpoenaed information may aid the Committee in its function, this argument fails.

10   Plaintiffs also assert the Committee is controlled by members of a rival political party and

11   thus raises concerns that the Committee will use the information it obtains "to harass or

12   persecute political rivals by inquiring into their dealings with the party Chair."  (*Id.*)

13   Plaintiffs say "[i]f the Select Committee prevails, it will get a list of who, when, and for

14   how long the Chair of the AZGOP was in contact with party members at a sensitive time .

15   . . [which] may 'induce members to withdraw' from the AZGOP 'and dissuade others from

16   joining it because of fear of exposure of their beliefs shown through their associations and

17   of the consequences of this exposure.'"  (*Id.*)

18          The Court finds these arguments highly speculative.   First, the Court "must

19   presume" that the Select Committee "will exercise [its] powers responsibly and with due

20   regard for the [Plaintiffs'] rights" in handling the information. *Exxon Corp.*, 589 F.2d at

21   589.  Second, apart from these broad allegations, Plaintiffs have provided no evidence to

22   support their contention that producing the phone numbers associated with this account

23   will chill the associational rights of Plaintiffs or the Arizona GOP.  Absent "objective and

24   articulable facts" otherwise, the Court finds Plaintiffs' arguments constitute "a subjective

25   fear of future reprisal" that the Ninth Circuit has held as insufficient to show an

26   infringement of associational rights.  *Brock*, 860 F.2d at 350.

27          Last, the law requires plaintiffs show that "enforcement of the subpoena *will result*

28   in harassment . . ."  *Id.* (emphasis added).  Although Plaintiffs allege that they have

- 13 -

1   "received death threats, harassing letters, phone calls, and threatening and sexually explicit

2   comments," because of the January 6th attack and Plaintiff Ward's associational status with

3   the Arizona GOP, the Court notes these incidents have already occurred.  *Id.* (Doc. 1 at ¶¶

4   55–56).   Plaintiffs do not otherwise explain how compliance with the subpoena would

5   result in harassment. Plaintiffs allege that the subpoena "must be declared violative of

6   Plaintiffs' First Amendment associational rights," but beyond conclusory allegations, they

7   do not demonstrate how the Select Committee's enforcement of the subpoena and

8   subsequent possession of the phone numbers "will have a deterrent effect on the exercise

9   of protected activities."  (*Id.* at ¶ 57).    The Court therefore finds Plaintiffs failed to

10   demonstrate a cognizable First Amendment claim.

11         Because Plaintiffs failed to show an applicable exception to the sovereign immunity

12   doctrine, Plaintiffs' claims against the Congressional Defendants are barred.

13         **B.  State and Federal Statutory Privileges**

14         Although Plaintiffs' claims against the Congressional Defendants are barred, T-

15   Mobile is also named a Defendant to this lawsuit.  The Court will therefore consider

16   Plaintiffs' state and federal statutory claims, which necessarily relate to T-Mobile's release

17   of the subpoenaed records.  Plaintiffs argue the subpoena should be quashed because it

18   infringes on rights protected under state and federal statutory privileges, including

19   Arizona's Physician-Patient Privilege and the Health Insurance Portability and

20   Accountability Act ("HIPAA").  (Doc. 2 at 7–10).

21         **a.   Arizona Physician-Patient Privilege**

22         "Arizona has adopted physician-patient privilege statutes for both civil and criminal

23   proceedings."  *Samaritan Health Servs. v. City of Glendale*, 714 P.2d 887, 889 (Az. Ct.

24   App. 1986).  The statute reads: "Unless otherwise provided by law, all medical records and

25   payment records, and the information contained in medical records and payment records,

26   are privileged and confidential."  *See* A.R.S. § 12-2292.

27         Plaintiffs argue the subpoena improperly seeks telephone "metadata," and that a

28   study from Stanford University shows that a patient's "name or relationship status are

1    immediately apparent from telephone metadata" as well as "countless other personal

2    details." (Doc. 2 at 8). Plaintiffs therefore contend disclosure of their patients' phone

3    numbers infringes on the physician-patient privilege under A.R.S. § 12-2292.

4          Congressional Defendants argue the Supremacy Clause of the U.S. Constitution,

5    U.S. Const., Art. VI, cl. 2, overrides Arizona's physician-patient privilege and thus the

6    statute cannot limit information validly sought under a Congressional subpoena. (Doc. 46

7    at 23). Congressional Defendants further assert a Congressional subpoena is not part of a

8    "civil matter" and therefore Arizona's physician-patient privilege statute does not apply.

9    (*Id.*)

10          In their Complaint, Plaintiffs allege the subpoena "constitutes a violation of Arizona

11   state law related to medical privilege." (Doc. 1 at ¶ 65). But "[t]his statute codifies the

12   physician-patient privilege and does not create a private right of action." *Skinner v. Tel-*

13   *Drug, Inc.*, 2017 WL 1076376, at *4 (D. Ariz. Jan. 27, 2017). Accordingly, Plaintiffs'

14   statutory violation claim in Count III cannot plausibly stand, and the Court will dismiss it.

15          Plaintiffs' argument that the subpoena should be quashed because it is overbroad

16   and sweeps into physician-patient privileged information is equally unsuccessful. The

17   Arizona statute applies to civil and criminal proceedings and, as Congressional Defendants

18   point out, a congressional subpoena involves neither. Instead, the subpoena here is issued

19   under Congress's constitutional power to conduct investigations "on which legislation

20   could be had." *See Mazars*, 140 S. Ct. at 2031. Moreover, even if the statute applied, the

21   Congressional Defendants are not seeking information related to the "confidential contents

22   of the . . . patient's medical records." *Carondelet Health Network v. Miller*, 212 P.3d 952,

23   956 (Ariz. Ct. App. 2009). "The whole purpose of the privilege is to preclude the

24   humiliation of the patient that might follow disclosure of his ailments." *Id.* (internal

25   citation omitted). As the court in *Miller* clarified, "if the disclosure of the patient's name

26   reveals nothing of any communication concerning the patient's ailments, disclosure of the

27   patient's name does not violate the privilege." *Miller*, 212 P.3d at 956. Here, the records

28   sought by Congressional Defendants "reveal[] nothing of any communication concerning

1    the patient's ailments."   *Id.*   Plaintiffs contend that their medical practice focuses

2    "exclusively on weight loss" and that "communication with certain types of doctors can

3    instantly reveal confidential facts about a patient's condition."  (Doc. 52 at 4).  But the

4    Court finds it implausible that a patient's phone number would "inevitably expose

5    information about the patient's medical history, condition, or treatment, and potentially

6    reveal information the patient had divulged in confidence."  *See Miller*, 212 P.3d at 955

7    (holding trial court's order requiring hospital to disclose the name, address, and telephone

8    number of a hospital patient did not violate the physician-patient privilege).

9                    **b.     The Health Insurance Portability and Accountability Act**

10    Count III of Plaintiffs' Complaint attempts to bring another cause of action under

11    HIPAA, alleging "the enforcement of the Subpoena must be enjoined until and unless

12    limitations are put in place to protect the [protected health information ("PHI")] of the

13    Plaintiffs' patients."  (Doc. 1 at ¶ 72).  Plaintiffs allege they are "covered entities" and that

14    "[d]isclosing the phone records and metadata from the Phone Number would provide the

15    PHI of an unknown but quantifiable number of individuals seeking medical treatment from

16    the Plaintiffs to the Committee and potentially to the public at large."  (*Id.* at ¶ 67).  As an

17    initial matter, it is well established that HIPAA does not provide a private cause of action.

18    *Webb v. Smart Document Sols.*, LLC, 499 F.3d 1078, 1081 (9th Cir. 2007).  Thus, under

19    the current Complaint, Plaintiffs' independent HIPAA claim cannot plausibly stand, and

20    the Court will dismiss it.

21    Nonetheless, the real question appears to be whether the Select Committee's request

22    for information that may otherwise be HIPAA protected is reason to quash the subpoena.

23    To that end, Plaintiffs argue the subpoena violates HIPAA because telephone numbers can

24    be used to identify the Wards' patients and those numbers constitute PHI.  (Doc. 2 at 9).

25    Congressional Defendants and T-Mobile argue T-Mobile is not a covered entity and

26    therefore HIPAA's disclosure restrictions do not apply.  (Doc. 53 at 13; Doc. 48 at 4).

27    HIPAA restricts health care entities from disclosure of PHI.  Generally, however,

28    HIPAA only applies to covered entities.  "A covered entity or business associate may not

1    use or disclose protected health information, except as permitted or required by [these

2    regulations]." 45 C.F.R. § 164.502(a). Covered entities include health plans, health plan

3    clearinghouses, or health care providers who transmit any health information in electronic

4    form in connection with a transaction covered by HIPAA. 45 C.F.R. §§ 160.102(a),

5    164.104(a). A business associate is a person or organization that "creates, receives,

6    maintains, or transmits protected health information" for "a covered entity" unless "in the

7    capacity of a member of the workforce of such covered entity." *Id.* § 160.103.

8        Covered entities and business associates may disclose PHI only with the patient's

9    consent or in response to a court order or discovery request. 45 CFR § 164.512(f)(1)(ii)(A).

10   Disclosure of PHI is permitted in response to a subpoena when the covered entity "receives

11   satisfactory assurance from the party seeking the information that reasonable efforts have

12   been made . . . to ensure that the individual who is the subject of the protected health

13   information . . . has been given notice of the request; or . . . reasonable efforts have been

14   made . . . to secure a qualified protective order." 45 C.F.R. §§ 164.512(e)(1)(ii)(A)–(B). A

15   qualified protective order prohibits the parties from using or disclosing PHI for any purpose

16   other than the litigation at hand and requires the parties to return or destroy the protected

17   information at the end of proceedings. 45 C.F.R. § 164.512(e)(1)(v).

18       Plaintiffs argue HIPAA applies here because Plaintiffs are the "true parties from

19   whom the information is sought." (Doc. 51 at 16). Plaintiffs cite no case law to support

20   this proposition and the Court accordingly rejects it. The Congressional Defendants plainly

21   issued a subpoena to T-Mobile, not Plaintiffs, and Plaintiffs do not represent that they

22   maintain or could produce the type of records sought in the subpoena. (Doc. 1-1 at 2). T-

23   Mobile is not a covered entity under HIPAA and therefore HIPAA's PHI disclosure

24   requirements do not apply to it.

25       The Court also notes HIPAA does not preclude production of PHI where an

26   adequate protective order is in place. 45 C.F.R. § 164.512(e); *Lind v. United States*, 2014

27   WL 2930486, at *2 (D. Ariz. June 30, 2014) (internal citation omitted). Plaintiffs allege

28   the parties have not discussed the prospect of a protective order or the potential PHI the

1    subpoena could implicate.  (Doc. 1 at ¶ 71).  The Court therefore encourages the parties to

2    engage in discussions regarding entry of a protective order designed to protect any potential

3    PHI.    Given the legitimate purpose underlying the Select Committee's investigation,

4    however, the Court will not quash the subpoena on the grounds that some of the information

5    could potentially be protected under statutes that do not apply to T-Mobile.  *See F.T.C. v.*

6    *Owens-Corning Fiberglas Corp.*, 626 F.2d 966, 970 (D.C. Cir. 1980) ("the judiciary must

7    refrain from slowing or otherwise interfering with the legitimate investigatory functions of

8    Congress.").

9    **IV.    Conclusion**

10           Plaintiffs bear the burden of establishing that jurisdiction over the Congressional

11   Defendants exists and have failed to do so here.  *Kokkonen*, 511 U.S. at 377.  Sovereign

12   immunity therefore bars Plaintiffs' claims against the Congressional Defendants.  Plaintiffs

13   note in their Complaint that T-Mobile was only added to ensure compliance with the

14   Court's Order.  (Doc. 1 at ¶ 11).  Because there is no viable claim against T-Mobile, the

15   Court will also dismiss it.

16           Accordingly,

17           **IT IS HEREBY ORDERED** that Plaintiffs' Motion to Quash (Doc. 2) is **denied**

18   and the Congressional Defendants' Motion to Dismiss (Doc. 46) is **granted**.  The Clerk of

19   the Court is kindly directed to terminate this action.

20           Dated this 22nd day of September, 2022.

21

22

23                                        _____
                                          Honorable Diane J. Humetewa
24                                            United States District Judge

25

26

27

28