Alexander Kolodin (SBN 030826)
Roger Strassburg (SBN 016314)
Veronica Lucero (SBN 030292)
Arno T. Naeckel (SBN 026158)
**Davillier Law Group, LLC**
4105 North 20th Street Suite 110
Phoenix, AZ 85016
602-730-2985
Email: akolodin@davillierlawgroup.com
           rstrassburg@davillierlawgroup.com
           vlucero@davillierlawgroup.com
           anaeckel@davillierlawgroup.com
           phxadmin@davillierlawgroup.com (file copies)

Laurin Mills (*pro hac vice*)
**Samek | Werther | Mills, LLC**
2000 Duke Street
Suite 300
Alexandria, VA 22314
703-547-4693
Email: laurin@samek-law.com

*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Dr. Michael P. Ward, D.O., *et al.*;<br><br>*Plaintiffs*,<br><br>v.<br><br>Bennie G. Thompson, *et al.*;<br><br>*Defendants*. | Case No. 3:22-cv-08015-DJH<br><br>**MOTION FOR INJUNCTION OR ADMINISTRATIVE INJUNCTION PENDING APPEAL** |

### PLAINTIFFS' MOTION FOR INJUNCTION OR ADMINISTRATIVE INJUNCTION PENDING APPEAL

In response to the Court's September 22, 2022, Memorandum Opinion ("Order"), Plaintiffs, Drs. Kelli Ward and Michael Ward, on behalf of themselves and Mole Medical Services, PC ("Mole Medical"), move pursuant to Fed. R. Civ. P. 62(d) and Fed. R. App. P 8(a)(1)(a) for an order enjoining enforcement of the subpoena served on Defendant T-Mobile by Defendant Select Committee (ECF 1-1) pending appeal while the Ninth Circuit considers the important constitutional and patient privacy questions presented in

this case. In the alternative, Plaintiffs ask that the Court enter an administrative injunction to allow Plaintiffs sufficient time to seek an emergency injunction in the Ninth Circuit. For the reasons set forth in the Memorandum below, this Motion should be granted.

**INTRODUCTION**

This is an unprecedented case where a Select Committee of the United States Congress has subpoenaed the telephone records of the state chair of the rival political party for a period encompassing one of the most contentious political periods in American history. As if that alone were not egregious enough, the state chair and her husband are also practicing physicians and the disclosure of their telephone records would reveal the identities of some of their patients (all of whom are being treated or counseled for weight loss issues) to the prying eyes of Congressional investigators known to be cooperating with the Department of Justice in the largest criminal investigation in the history of the United States. If the Wards' telephone records are disclosed, congressional investigators and/or federal government law enforcement agents are going to contact every number on that list and query each subscriber as to what they were discussing with Dr. Kelli Ward, the Chair of the Arizona Republican Party. That is not speculation, it is a certainty.[1] There is no other reason for the Select Committee to seek this information.

The potential chilling effect on public participation in partisan politics in Arizona is palpable. The message is that if you involve yourself in a political fight, and the other side wins, then expect a call or visit from government agents and who knows where things

---

[1] The September 25, 2022 edition of the *Washington Post* reports on a new book by former Select Committee investigator Denver Riggleman. The article discusses how Riggleman's team focused on linking names to the telephone numbers and text messages of former White House Counsel Mark Meadows and others. Riggleman called the messages a "road map" that allowed the Select Committee to "structure the investigation." https://www.washingtonpost.com/politics/2022/09/25/ex-staffers-unauthorized-book-about-jan-6-committee-rankles-members/ (last accessed September 25, 2022).

will go from there. That is standard operating procedure in totalitarian states, but the criminalization of politics has never been tolerated in America.

There is also a serious and unwarranted danger of unnecessarily damaging the Wards professionally and harming their patients' health. It is hard for many patients to muster enough courage to seek medical help for certain ailments and then to be completely candid once treatment is sought. If the Wards' weight-loss patients are contacted by congressional or law enforcement investigators, they are less likely to continue treatment with the Wards and they may abandon further treatment once they realize that the physician-patient privilege and HIPAA are not obstacles to congressional or federal government curiosity. The important and substantial First Amendment and patient privacy questions presented in this case warrant an injunction prohibiting enforcement of the subpoena pending resolution Plaintiffs' appeal. Alternatively, the Court should enter a brief administrative injunction to allow Plaintiffs sufficient time to seek an injunction in the Ninth Circuit.

**Argument**

**I.   Standard.**

The Court "has the authority to issue an injunction pending appeal, notwithstanding its denial of preliminary injunctive relief, pursuant to Federal Rule of Civil Procedure 62([d])."[2] *See Beverage Ass'n v. City & Cnty. of San Francisco*, Case No. 15-cv-3415, 2016 U.S. Dist. LEXIS 74261, *2 (N.D. Cal. June 7, 2016).[3] The factors for determining a motion for injunction pending appeal are:

(1)   whether "the appeal raises serious and difficult questions of law where the law is somewhat unclear";

(2)   whether the applicant will be irreparably injured unless a stay is granted;

---

[2]   Fed. R. App. Proc. 8 also dictates that a motion to stay should first be decided by the district court even if, as here, a notice of appeal has already been filed.
[3]   Rule 62 was reorganized in 2018, so some cases refer to subsection (c) instead of (d).

(3) whether the grant of a stay will substantially injure other interested parties; and

(4) where the public interest lies.

*Overstreet v. Thomas Davis Medical Centers, P.C.*, 978 F. Supp. 1313, 1314 (D. Ariz. 1997) (citing *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)); *see also Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 66 (2020) (applying same factors). Although the above criteria must be applied individually to the facts of each case, the Court's decision must be made based on all the criteria. *Overstreet*, 978 F. Supp. at 1314 (citation omitted).

In the context of an injunction pending appeal, the courts have interpreted the substantial likelihood of success on the merits prong as requiring that the movant show that "the appeal raises serious and difficult questions of law in an area where the law is somewhat unclear." *Id.* (citing *Mamula v. Satralloy, Inc.*, 578 F. Supp. 563, 580 (S.D. Ohio 1983)). "This is so because a literal reading [of the likelihood of success prong] would seem to require a district court to determine that it had erred in its original ruling, and such a requirement would probably lead to consistent denials of motions to stay." *Mamula*, 578 F. Supp. at 580 (citing *Evans v. Buchanan*, 435 F. Supp. 832, 843 (D. Del. 1977)).

Thus, an injunction pending appeal may be appropriate even if the Court believes that its analysis in denying the motion was correct. *Beverage Ass'n*, 2016 WL 9184999 at *4-5 (citing *Protect Our Water v. Flowers*, 377 F. Supp. 2d 882, 884 (E.D. Cal. 2004)). "[D]istrict courts properly stay their own orders when they have ruled on an admittedly difficult legal question and when the equities of the case suggest that the status quo should be maintained." *Flowers*, 377 F. Supp. 2d at 884 (cleaned up) (citing *Washington Metro. Area v. Holiday Tours*, 559 F.2d 841, 844 (D.C. Cir. 1977)). "An injunction is frequently issued where the trial court is charting a new and unexplored ground and the court determines that a novel interpretation of the law may succumb to appellate review." *Id.*

(cleaned up) (citation omitted). *See also MediNatura, Inc. v. FDA*, Case No. 20-cv-2066, 2021 WL 1025835, *6 (D.D.C. March 16, 2021) (noting that the stay pending appeal standard is "more flexible than a rigid application of the traditional four-part injunction standard.").

## II. The Appeal Raises Serious and Difficult Questions of Law Where the Law Is Unclear.

### A. Plaintiffs' First Amendment Arguments Raise Substantial and Difficult Questions in an Area of the Law That Is Unsettled.

Plaintiffs alleged that the Select Committee Subpoena infringes their core First Amendment right to associate with others for political purposes. When such core political associational rights are at stake, courts must apply the "exacting scrutiny" standard. Exacting scrutiny requires that there be "a substantial relation between the disclosure requirement and a sufficiently important governmental interest, and that the disclosure be narrowly tailored to the interest it promotes." *Ams. for Prosperity Found. v. Bonta*, 141 S. Ct. 2373, 2385 (2021).

In their Opposition to the Select Committee's Motion to Dismiss, Plaintiffs argued, relying heavily on the analogous facts presented in *NAACP v. Alabama*, 357 U.S. 449, 462 (1958), that the Select Committee's Subpoena could not withstand exacting scrutiny analysis in this situation. Investigators from a rival political party are seeking to create a map of Chair Ward's political contacts and use this map to expand the investigation of political opponents. That is similar to what Alabama was seeking to do back in 1958.

### B. Exacting Scrutiny Analysis Is an Unsettled and Rapidly Developing Area of the Law.

The phrase "exacting scrutiny" first appeared in Supreme Court jurisprudence in *NAACP v. Alabama*, which dates from early in the civil rights era, but it has been

infrequently and inconsistently applied by the courts since. One scholar described exacting scrutiny as follows:

> Exacting scrutiny is a standard constitutional test that has, curiously, received little critical attention. Some murkiness and ambiguity most assuredly attach to the idea of exacting scrutiny.

R. George Wright, *A Hard Look at Exacting Scrutiny*, 85 UMKC L. Rev. 207 (Fall 2016).

The exacting scrutiny analysis has been most frequently – but not exclusively – applied to disclosure requirements in the electoral context. *John Doe No. 1 v. Reed*, 561 U.S. 186, 196 (2010) (collecting authority). Since *NAACP v. Alabama*, most compelled disclosure rules have not survived exacting scrutiny. *See, e.g.*, *Buckley v. Valeo*, 424 U.S. 1, 64 (1976) (invalidating a ceiling on campaign expenditures); *Buckley v. American Constitutional Law Foundation, Inc.*, 525 U.S. 182, 204 (1999) (holding that Colorado statute requiring that petition circulators be registered voters violated First Amendment; Colorado statute requiring that petition circulators wear identification badges bearing the circulator's name violated First Amendment; Colorado statute requiring that proponents of an initiative report names and addresses of all paid circulators and amount paid to each circulator violated First Amendment) (Ginburg, J.); *Citizens United v. FEC*, 558 U.S. 310,365-66 (2010) (federal law barring independent corporate expenditures for electioneering communications violated First Amendment).

### C. The First Amendment Arguments in this Case Closely Parallel the Arguments Raised in *NAACP v. Alabama* and *RNC v. Pelosi* and the D.C. Circuit Found That Such Arguments Raised Important and Unsettled Constitutional Questions.

In their Opposition to the Select Committee's Motion to Dismiss, Plaintiff argued in detail the similarities between this case and *NAACP v. Alabama*. That discussion, therefore, is not repeated here but incorporated by reference.

The facts and procedural history of this case also strongly resemble those of *Republican National Committee ("RNC") v. Nancy Pelosi, et al*, Case No. 22-cv-659 (D.D.C.), wherein the Select Committee sought to obtain confidential records and communications from Salesforce.com, Inc., a third-party customer relationship information management vendor for the RNC. The RNC filed a complaint against members of the Select Committee and Salesforce seeking to enjoin enforcement of the subpoena. See *RNC*, __ F. Supp. 3d __, 2022 U.S. Dist. LEXIS 78501, *2-18 (D.D.C. May 1, 2022). As here, the RNC sought relief based, *inter alia*, on grounds that the subpoena violated its right to maintain the confidentiality of its member relationship information under the First Amendment. *Id*. at *16.

The district court acknowledged that the RNC stated a valid First Amendment claim based on its interest in the confidentiality of the materials sought by the subpoena. *Id*. at *58-60. The district court was particularly troubled by the Select Committee's failure to promise to keep the membership relationship information confidential (*id*. at 59), but "perhaps more importantly," the court found that "the RNC's information need not be leaked to the media to impact its First Amendment interests." *Id*. at *60. This was simply a matter of recognizing the "political realities" of the situation. *Id*. (citing *United States v. Rumely*, 345 U.S. 41, 44 (1953)). Applying exacting scrutiny, the district court nevertheless found that the RNC's burden was not on the same level as that found in *AFL-CIO v. FEC*, 333 F.3d 168, 176-77 (D.C. Cir. 2003), and that the subpoenas were sufficiently narrowly tailored to the Select Committee's interest. See *RNC*, 2022 U.S. Dist. LEXIS 78501 at *68-71.

It was noteworthy that during oral argument on RNC's motion for preliminary injunction, counsel for the Select Committee acknowledged that, in the event that the district court denied the RNC's request for a preliminary injunction, the district court would have the discretion to enjoin compliance with the subpoena pending appeal. See *RNC*, Case No. 22-cv-659 (D.D.C.), Transcript (ECF 24) at 112:22 – 113:6. As a result,

recognizing that the RNC's claims could be moot if forced to comply with the subpoena before having an opportunity to seek an injunction on appeal, the district court entered an administrative injunction to preserve the status quo. *RNC*, 2022 U.S. Dist. LEXIS 78501 at *74-76. On a subsequent motion, the district court denied an injunction pending appeal but granted a further administrative injunction to allow the RNC an opportunity to seek an injunction pending appeal in the circuit court. *See RNC*, 2022 U.S. Dist. LEXIS 91503 (D.D.C. May 20, 2022).

What happened next is of particular interest.

The RNC promptly filed an emergency motion for injunction pending appeal in the D.C. Circuit. *See RNC v. Pelosi, et al*, Case No. 22-5123 (D.C. Cir.) (attached as Exhibit "A"). On the likelihood of success on the merits prong, the RNC emphasized the district court's equivocal treatment of its First Amendment concerns (which the district court had acknowledged were unprecedented), and its failure properly to apply the exacting scrutiny standard to those concerns. Ex. "A" at 12-16. The RNC argued that it "deserve[d] the opportunity to test the district court's decision on the importance of the information demanded—and its weight versus the interests of the Select Committee's—on appeal." *Id*. at 16.

The D.C. Circuit granted the RNC's motion, finding that the RNC "satisfied the stringent requirements for an injunction pending appeal." Order of May 25, 2022 (attached as Exhibit "B"). While the court did not elaborate on its reasons, one may assume by its ruling that the D.C. Circuit found the RNC's arguments persuasive enough to warrant an injunction.

This Court has acknowledged the subsequent procedural history in RNC. After the Select Committee withdrew the subpoena, the D.C. Circuit dismissed the case as moot and vacated the judgment of the district court. *See RNC*, Case No. 22-5123, 2022 U.S. App. LEXIS 26068 (D.C. Cir. Sept. 16, 2022) (noted in Order of Dismissal (ECF 55) at 2, n.2). The D.C. Circuit specifically noted that vacatur was necessary "[b]ecause the

Committee caused the mootness and thereby deprived [the circuit court] of the ability to review the district court's decision, and **given the important and unsettled constitutional questions that the appeal would have presented**. . . ." 2022 U.S. App. LEXIS 26068 at *4 (per *curiam*) (quoted in Order of Dismissal (ECF 55) at 2, n. 2) (emphasis added). This provides an important clue as to why the D.C. Circuit had granted the injunction pending appeal.

Here, the circumstances are even more compelling. First, unlike the district court in *RNC*, here the Court found that Plaintiffs failed to assert a viable First Amendment claim at all. Order (ECF 55) at 13-14. While Plaintiffs do not expect this Court to reverse itself, there can be no doubt that the First Amendment concerns raised by this case present "important and unsettled constitutional questions[.]" *RNC*, 2022 U.S. App. LEXIS 26068 at *4. *See also Overstreet*, 978 F. Supp. at 1314 (citations omitted); *Mamula*, 578 F. Supp. at 580; *Evans*, 435 F. Supp. at 843.

Second, unlike in *RNC,* the Committee here seeks access to information that will lead to the disclosure of the identities of patients of two practicing physicians. Plaintiffs are unaware of any precedent for such a request from a congressional committee. While the Court disagreed with Plaintiffs' position on the important patient information privacy issues, the unprecedented nature of this sort of intrusion into business affairs and patient information that are completely irrelevant to the Select Committee's purpose must be taken into account in deciding whether to grant the requested injunction.

**III.   The Irreparable Harm That Plaintiffs Will Suffer Absent an Injunction Cannot Be Reasonably Disputed.**

Unless this Court issues an injunction prohibiting enforcement of the subpoena, T-Mobile will have no choice but to comply. Once the Select Committee gets the information, nothing can be done to protect Plaintiffs' rights as both a practical and legal matter. The proverbial toothpaste will all be out of the tube, and there will be no way for any court to undo the disclosure of political contact and patient telephone numbers. Once

the disclosure is made, this case will be moot. Even if there were a practical way to hit the reset button after a successful appeal (which there is not), the Constitution's Speech or Debate Clause immunizes Members of Congress from civil or criminal liability arising from "actions falling within the legislative sphere." *Senate Permanent Subcommittee on Investigations v. Ferrer*, 856 F.3d 1080, 1086 (D.C. Cir. 2017) (cleaned up). A federal court would, thus, be powerless to order the Select Committee to return the information, let alone award Plaintiffs any other remedy.

**IV.   The Select Committee Has No Immediate Need for the Requested Information.**

One prong of the Rule 62 test is whether an injunction will substantially injure another interested party. The Select Committee, which is the only party in position to argue injury, cannot credibly contend that it has an immediate need for the requested information. The timeline below reveals why:

| | |
|---|---|
| January 29, 2022: | The Select Committee issues its subpoena to T-Mobile. |
| February 1, 2022: | Plaintiffs file Complaint and Motion to Quash.  Dkt. 1 & 2. |
| February 25, 2022: | T-Mobile requests an extension.  Dkt. 25. |
| April 14, 2022: | The Select Committee requests an extension.  Dkt. 30. |
| May 17, 2022: | The Select Committee makes another extension request.  Dkt. 32. |
| June 27, 2022: | The Select Committee requests another extension.  Dkt. 35. |
| June 30, 2022: | T-Mobile requests another extension.  Dkt. 38. |
| July 27, 2022: | The Select Committee makes yet another request for extension.  Dkt. 40. |
| July 29, 2022: | The Court issues an Order granting an extension to August 8 and denying future extensions.  Dkt. 43. |

The six-month timeline shows – undeniably – that but for the Court's intervention in late July, this matter would not yet be fully briefed, much less decided.[4]  On this record, the Select Committee cannot credibly contend that it has an urgent need for this information or that it will be injured in any way by an injunction.

The Select Committee played this very same game of *hurry-up-and-wait* in *RNC*, much to the obvious exasperation of the D.C. Circuit. *See RNC*, 2022 U.S. App. LEXIS 26068 at *3-4. The Select Committee initially claimed that even a modest delay would prejudice its investigation.  *Id*. at *3-4.  However, after the circuit court granted an injunction pending appeal, the Select Committee moved to postpone the briefing schedule.  *Id*. at *3. Then, on September 2, 2022 the Select Committee filed a motion to dismiss the case as moot, informing the court that it had "determined that it no longer has a need to pursue the specific information requested in the Salesforce subpoena," and that it had withdraw the subpoena as a result. *See RNC*, Case No. 22-5123, Doc. #1962096 at 3-4 (D.C. Cir.).

An injunction would only preserve the status quo that existed before the Court intervened in late July to force the Select Committee to respond.  But for the Court's intervention, the six-month pattern of extensions suggests that the Select Committee was perfectly content with requesting extensions indefinitely.  In short, the Select Committee can easily wait for the Ninth Circuit to resolve the important First Amendment and patient privacy issues that are the central questions to be raised on appeal.  There is no plausible injury argument.

---

[4] During this six-month period, the Select Committee deposed or interviewed hundreds of other witnesses, and conducted eight televised hearings without feeling the need to respond to Plaintiffs' complaint and motion to quash. https://www.latimes.com/politics/story/2022-06-13/what-is-the-tv-schedule-for-the-next-jan-6-committee-hearings (last accessed September 23, 2022).  The Select Committee is televising its ninth hearing on September 27, 2022.

**V.     The Public Interest Favors an Injunction.**

"[S]peech on 'matters of public concern' . . . is 'at the heart of the First Amendment's protection.'" *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 758–759 (1985) (citations omitted).  The First Amendment reflects "a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open." *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964).  That is because "speech concerning public affairs is more than self-expression; it is the essence of self-government." *Garrison v. Louisiana*, 379 U.S. 64, 74–75 (1964).  Accordingly, "speech on public issues occupies the highest rung of the hierarchy of First Amendment values, and is entitled to special protection." *Connick v. Myers*, 461 U.S. 138, 145 (1983) (internal quotation marks omitted).

The essence of self-government is free and fair elections.  The election in Arizona was so close that most major national news outlets – NBC, ABC, CBS and CNN – did not call Arizona for now-President Biden until November 12, 2022, which was nine days after the polls closed.  https://www.npr.org/2020/11/19/936739072/ap-explains-calling-arizona-for-biden-early-before-it-got-very-close (last accessed September 24, 2022).  Chair Ward was at the center of a heated debate as whether the presidential election results in Arizona were accurate and fair.  If core First Amendment rights have a core, such a debate is certainly at the core of core First Amendment rights.

Plaintiffs argue that if T-Mobile complies with the Select Committee Subpoena, then investigators will contact every party member in touch with Chair Ward during this overheated period of political debate.  That act, when it occurs, will necessarily chill public participation on one of the most important political issues of our times, which is the integrity of elections.  If citizens are not convinced that elections are fair, then the very legitimacy of our democratic institutions is lost.

Core First Amendment political speech and patient privacy rights are at stake on this appeal and the Select Committee's actions in this case demonstrate that the Select

Committee has no urgent need for this information. The public interest strongly favors a stay until these important questions receive appellate review.

**CONCLUSION**

For the reasons set forth above, Plaintiffs respectfully ask that the Court enter an order enjoining enforcement of the Select Committee's subpoena and/or T-Mobile compliance with same pending Plaintiffs' appeal to the Ninth Circuit. In the alternative, Plaintiffs ask that the Court enter a temporary administrative injunction to allow Plaintiffs sufficient time to seek injunctive relief in the Ninth Circuit.

Respectfully submitted this 26th day of September 2022

/s/ *Arno T. Naeckel*
Alexander Kolodin
Roger Strassburg
Veronica Lucero
Arno T. Naeckel
**Davillier Law Group, LLC**
4105 North 20th Street
Suite 110
Phoenix, AZ 85016

/s/ *Laurin Mills*
Laurin Mills
**SAMEK | WERTHER | MILLS, LLC**
2000 Duke Street
Suite 300
Alexandria, VA 22314
(*Pro hac vice*)

## CERTIFICATE OF SERVICE

I certify that on September 26, 2022, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing, which electronically sends a copy to be served on all registered parties.

*/s/ Arno T. Naeckel*