DOUGLAS N. LETTER (D.C. Bar No. 253492)
  General Counsel
TODD B. TATELMAN (VA Bar No. 66008)
  Principal Deputy General Counsel
ERIC R. COLUMBUS (D.C. Bar No. 487736)
  Special Litigation Counsel

OFFICE OF GENERAL COUNSEL
U.S. HOUSE OF REPRESENTATIVES
5140 O'Neill House Office Building
Washington, D.C. 20515
Telephone: (202) 225-9700
Douglas.Letter@mail.house.gov

*Attorneys for Congressional Defendants*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Dr. Michael P. Ward, et al., <br><br> Plaintiffs, <br><br> v. <br><br> Bennie G. Thompson, et al., <br><br> Defendants. | Case No. 3:22-cv-08015-DJH <br><br> **CONGRESSIONAL DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR INJUNCTION OR ADMINISTRATIVE INJUNCTION PENDING APPEAL** <br><br> Assigned to: Judge Diane Humetewa |

## INTRODUCTION

Dr. Kelli Ward[1] continues to try to impede the important work of the United States House Select Committee to Investigate the January 6th Attack on the United States Capitol ("Select Committee") by asking this Court to enter an injunction to block the timely investigation of her efforts to undermine the 2020 Presidential election. But she cannot meet any of the requirements to obtain such an extraordinary remedy—much less all of them. *First*, she cannot demonstrate any serious questions warranting appellate review. *Second*, she fails to establish that any harm, much less irreparable injury, would flow from T-Mobile's compliance with the subpoena. *Finally*, the balance of the equities and the public interest overwhelmingly favor the Select Committee. She does not merit either an injunction or an administrative injunction pending appeal, and this Court should deny her motion.

## STANDARD

"To determine whether to grant an injunction pending appeal, this court applies the test for preliminary injunctions." *Doe v. San Diego Unified Sch. Dist.*, 19 F.4th 1173, 1176 (9th Cir. 2021). "A plaintiff seeking a preliminary injunction must establish that [she] is likely to succeed on the merits, that [she] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [her] favor, and that an injunction is in the public interest." *Id.* (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)) (alterations in *Doe*). Where, as here, the injunction is sought against the government, the balance of the equities and public interest factors merge. *See Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

The Ninth Circuit also applies "an alternative 'serious questions' standard, also known as the 'sliding scale' variant of the *Winter* standard." *Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613, 635 (9th Cir. 2021) (quoting *Ramos v. Wolf,* 975 F.3d 872, 887

---

[1] As noted in Congressional Defendants' memorandum accompanying their motion to dismiss, the Select Committee has voluntarily withdrawn its demand for call detail records associated with plaintiff Dr. Michael Ward. *See* ECF 46 at 4 n.8. The third plaintiff, Mole Medical Services, P.C., appears not to raise any First Amendment arguments. Accordingly, this brief refers solely to Dr. Kelli Ward.

(9th Cir. 2020) and *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134 (9th Cir. 2011)). "Under that formulation, '"serious questions going to the merits" and a balance of hardships that tips sharply towards the plaintiff[] can support issuance of a preliminary injunction, so long as the plaintiff[] also show[s] that there is a likelihood of irreparable injury and that the injunction is in the public interest.'" *Id.* (quoting *All. for the Wild Rockies*, 632 F.3d at 1135). "To the extent prior cases applying the 'serious questions' test have held that a preliminary injunction may issue where the plaintiff shows only that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor, without satisfying the other two prongs, they are superseded by *Winter*, which requires the plaintiff to make a showing on all four prongs." *All. for the Wild Rockies*, 632 F.3d at 1135.

These standards apply to district courts entertaining a motion for an injunction pending appeal under Fed. R. Civ. P. 62(d). *See, e.g.*, *Protecting Ariz.'s Res. and Child. v. Fed. Highway Admin.*, No. CV-15-01219, 2016 WL 9080879, at *1 (D. Ariz. Oct. 26, 2016); *All. for the Wild Rockies v. Kruger*, 35 F. Supp. 3d 1259, 1263-68 (D. Mont. 2014).

Finally, "[s]erious questions are 'substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberative investigation.'" *Senate of State of Cal. v. Mosbacher*, 968 F.2d 974, 977-78 (9th Cir. 1992) (quoting *Gilder v. PGA Tour, Inc.*, 936 F.2d 417, 422 (9th Cir. 1991)).

**ARGUMENT**

**I. Dr. Ward Cannot Demonstrate Either a Likelihood of Success or "Serious Questions" Pending Appeal**

In her motion, Dr. Ward addresses only her First Amendment claim, thus conceding that none of her other arguments can justify an injunction pending appeal. But she is wrong to assert that she is likely to succeed on her First Amendment argument—or even that her case raises any "serious questions." It does not.

Dr. Ward's motion rests on a fundamentally misguided comparison of this case to *Republican National Committee ("RNC") v. Pelosi*, No. 22-cv-659 (D.D.C.), in which the RNC sued to enjoin one of its vendors from complying with a Select Committee subpoena.

- 2 -

1    The RNC did not prevail before the district court and failed in its effort to obtain an
2    injunction pending appeal from the district court, before convincing the court of appeals to
3    grant an injunction.  See *RNC*, --- F. Supp. 3d ---, No. 22-cv-659, 2022 WL 1294509
4    (D.D.C. May 1, 2022), *appeal dismissed as moot and judgment vacated*, No. 22-5123,
5    2022 WL 4349778 (D.C. Cir. Sept. 16, 2022); No. 22-cv-659, 2022 WL 1604670 (D.D.C.
6    May 20, 2022); Order, No. 22-5123 (D.C. Cir. May 25, 2022).  Dr. Ward emphasizes
7    (Mot. 8-9, ECF 57) the D.C. Circuit's indication that the RNC's appeal, had it not been
8    mooted, would have presented "important and unsettled constitutional questions."  *RNC*,
9    No. 22-5123, 2022 WL 4349778, at *1 (D.C. Cir. Sept. 16, 2022) (per curiam).
10   Congressional Defendants respectfully disagree with the D.C. Circuit on that point.  More
11   importantly, however, no such questions are present here given the vast differences
12   between the two cases.
13            *First*, this case, unlike *RNC*, involves not a political party but an individual.  That
14   she happens to be the chair of the Arizona Republican Party does not change that fact.  It is
15   axiomatic that a "plaintiff generally must assert h[er] own legal rights and interests, and
16   cannot rest h[er] claim to relief on the legal rights or interests of third parties."  *Warth v.*
17   *Seldin*, 422 U.S. 490, 499 (1975).  Dr. Ward's motion does not contend otherwise.  *See*
18   Mot. 5 ("Plaintiffs alleged that the Select Committee Subpoena infringes *their* core First
19   Amendment right to associate with others for political purposes.") (emphasis added).
20            For the same reason (among others), Dr. Ward is wrong to compare this case to
21   either *NAACP v. Alabama*, 357 U.S. 449 (1958), in which the Supreme Court ruled in
22   favor of the NAACP in its First Amendment freedom of association claim brought on
23   behalf of the NAACP's members, or *Ams. for Prosperity Found. v. Bonta*, 141 S. Ct. 2373
24   (2021), in which the Supreme Court struck down a state disclosure requirement that
25   applied to nonprofit organizations.  Both cases involved First Amendment challenges by
26   organizations advancing the First Amendment interests of their members or donors.
27            *Second*, the records sought in *RNC* were not call detail records—which include only
28   limited, non-content connection information such as when a call was made or text was

- 3 -

sent, its duration (if a call), and which phone numbers were involved. Rather, the subpoena at issue in *RNC* sought a variety of data regarding the performance of the RNC's email campaigns, as well as communications between the RNC and its email vendor, and the vendor's internal documents and communications regarding the RNC's email campaigns. *See RNC*, 2022 WL 1294509, at *3. Congressional Defendants agree, of course, with the *RNC* district court's holding that the subpoena was consistent with the First Amendment. But even assuming *arguendo* that it was not, there would be no basis to extend such logic to a simple request for only call detail records, which do not reveal any communications content and do not provide data regarding the effectiveness of a political party's messaging.

*Third*, Dr. Ward has made no effort to articulate any cognizable First Amendment harm that would befall her upon T-Mobile's compliance with the subpoena. The RNC submitted declarations purporting to articulate First Amendment harm that, in its view, would ensue from compliance. *See* Decl. of Christian Schaeffer in Supp. of Pl.'s Mot. for Prelim. Inj., *RNC*, No. 22-cv-659 (D.D.C. Mar. 15, 2022), ECF 8-2; Suppl. Decl. of Christian Schaeffer in Supp. of Pl.'s Mot. for Prelim. Inj., *RNC*, No. 22-cv-659 (D.D.C. Mar. 29, 2022), ECF 21 -1. Dr. Ward, by contrast, has not done so, nor has she articulated any non-speculative theory of harm in her complaint.

This failure is fatal to her claim. As this Court noted in its Order:

> To escape lawful government investigation, plaintiffs must demonstrate a "prima facie showing of arguable first amendment infringement . . . ." *Brock v. Loc. 375, Plumbers Int'l Union of Am., AFL-CIO*, 860 F.2d 346, 350 (9th Cir. 1988). This requires plaintiffs show that "enforcement of the subpoena will result in (1) harassment, membership withdrawal, or discouragement of new members, or (2) other consequences which objectively suggest an impact on, or 'chilling' of, the members' associational rights." *Id.* Plaintiffs must provide "objective and articulable facts, which go beyond broad allegations or subjective fears." *Id.* at n.1. A "subjective fear of future reprisals is an insufficient showing of infringement of associational rights." *Id.* "The existence of a prima facie case turns not on the type of information sought, but on whether disclosure of the information will have a deterrent effect on the exercise of protected activities." *Perry v. Schwarzenegger*, 591 F.3d 1147, 1162 (9th Cir. 2010).

- 4 -

1    Order 12-13, ECF 55.  This Court has already correctly held that Dr. Ward's effort to
2    suggest that harm would ensue from compliance is "highly speculative." *Id.* at 13.
3    Accordingly, this Court found that, "[a]bsent 'objective and articulable facts' otherwise,
4    . . . Plaintiffs' arguments constitute 'a subjective fear of future reprisal' that the Ninth
5    Circuit has held as insufficient to show an infringement of associational rights." *Id.*
6    (quoting *Brock*, 860 F.2d at 350).

7         In her motion for an injunction pending appeal, Dr. Ward makes no attempt to argue
8    that she is likely to succeed at reversing this aspect of this Court's holding—or even that
9    the holding presents a "serious question" on appeal.  Indeed, Dr. Ward's motion does not
10   address this holding at all.

11        Finally, Dr. Ward appears to argue (Mot. 9) that the possibility that call detail
12   records will reveal the identities of her medical patients, which she argues is
13   "unprecedented" and "completely irrelevant to the Select Committee's purpose," weighs in
14   her favor as to likelihood of success.  It does not.  Dr. Ward's motion does not even
15   contest this Court's disposition of her arguments regarding her medical patients.  And
16   because cellular phones are typically used for multiple purposes, the mere fact that an
17   investigative request for call detail records may capture some records unrelated to the
18   investigative interest does not suffice to create a "serious question" on appeal.  Moreover,
19   the call detail records in question will not reveal anything about the nature of Dr. Ward's
20   relationship with her contacts nor the substance of her conversations with them.

21        In sum, Dr. Ward's inability to establish any "serious question" on appeal—*i.e.*, an
22   issue that are "substantial, difficult, and doubtful"—is enough to doom her motion.  *See,*
23   *e.g.*, *Doe*, 19 F.4th at 1177.  Nevertheless, Congressional Defendants will analyze the
24   remaining factors.

25        **II. Dr. Ward Will Not Suffer Irreparable Harm Absent an Injunction**
26        Dr. Ward's theory of injury fails because it remains contingent on the same flawed
27   theory of harm that was fatal to her theory of the case.  She does not identify any new
28   injury beyond her prior assumption that, if T-Mobile produces the requested call detail

records, her associational rights will be chilled.  As this Court recognized, such speculative and subjective assertions of harm do not suffice to make out a First Amendment injury under *Brock*.  *See* Order 12-13.  Moreover, the Ninth Circuit has expressly recognized that "[s]peculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction."  *Caribbean Marine Servs. Co., Inc. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988).  In fact, a much greater showing is required.  Specifically, Dr. Ward must "do more than merely allege imminent harm sufficient to establish standing; [she] must *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief." *Id.* (emphasis in original).

       Dr. Ward also asserts that "the violation of the First Amendment rights of the Plaintiffs would lead to substantial and serious injury and harassment," Compl. ¶ 54, ECF 1, and she and her husband claim to have received threatening and harassing communications as a result of "the controversy and her associational status," *id.* ¶¶ 55-56. However, as this Court noted, controlling precedent "requires plaintiffs show that 'enforcement of the subpoena *will result* in harassment.'"  Order 13 (quoting *Brock*, 860 F.2d at 350) (emphasis added by this Court).  Dr. Ward does not explain how the provision of her call detail records by T-Mobile to the Select Committee would lead to any *future* injury.

       In the absence of any irreparable injury, Dr. Ward cannot prevail.  *See, e.g.*, *Winter*, 555 U.S. at 22 ("Our frequently reiterated standard requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is *likely* in the absence of an injunction." (emphasis in original)).

**III. The Balance of Equities and Public Interest Favor the Select Committee**

       Finally, the merged analysis of equities and public interest also favors the Select Committee.  The Select Committee is investigating a grave assault on our Nation's democracy, one whose seeds were planted months before January 6th.  The completion of this investigation in a thorough fashion is of great public interest.  As the D.C. Circuit has held, the Select Committee's interest in studying the January 6th attack and proposing

remedial measures is "vital" and "uniquely weighty." *Trump v. Thompson*, 20 F.4th 10, 17, 35 (D.C. Cir. 2021), *injunction denied*, 142 S. Ct. 680 (2022), *cert. denied*, 142 S. Ct. 1350 (2022).

That the Select Committee's investigative priorities have dictated its litigation focus over time has no bearing on whether the equities *now* favor Dr. Ward. The Select Committee opposes Dr. Ward's efforts to quash the T-Mobile subpoena, due to her relevance to the Select Committee's investigation. As discussed in Congressional Defendants' motion to dismiss, Dr. Ward tried to stop the vote count in Maricopa County, promoted inaccurate allegations of election interference by Dominion Voting Systems, and served as a fake elector as part of Donald Trump's scheme to overturn the election on January 6th by sending Congress spurious electoral slates in contravention of the actual electoral outcome in several states. These matters of are significant interest to the Select Committee, and allowing T-Mobile to comply with the subpoena will impose no hardships on Dr. Ward, who need not act at all.

The Select Committee is authorized through the end of the current Congress, which expires on January 3, 2023. *See* H. Res. 503, 117th Cong. (2021); *see also* U.S. Const., Amend. XX, § 1. Far from (as Dr. Ward suggests) preserving the status quo, an injunction pending appeal would, practically speaking, make it impossible for the Select Committee to obtain and utilize the subpoenaed records before that date.

Dr. Ward asserts (Mot. 2), without any basis, that subpoena compliance will produce a "chilling effect" on political participation. As this Court discussed in its Order, she has produced no evidence to support this contention. *See* Order 13. Furthermore, "the Court 'must presume' that the Select Committee 'will exercise [its] powers responsibly' . . . in handling the information." *Id.* (quoting *Exxon Corp. v. FTC*, 589 F.2d 582, 589 (D.C. Cir. 1978)).

Dr. Ward correctly notes (Mot. 12) that "[t]he essence of self-government is free and fair elections." The Select Committee is investigating Kelli Ward's role in a

catastrophic effort to overturn just such an election. The public interest favors allowing the Select Committee to complete its work.

## CONCLUSION

For all the reasons stated above, Plaintiffs' motion for an injunction pending appeal or a temporary administrative injunction should be denied.

Respectfully submitted,

*/s/ Douglas N. Letter*
DOUGLAS N. LETTER
  *General Counsel*
TODD B. TATELMAN
  *Principal Deputy General Counsel*
ERIC R. COLUMBUS
  *Special Litigation Counsel*

OFFICE OF GENERAL COUNSEL
U.S. HOUSE OF REPRESENTATIVES
5140 O'Neill House Office Building
Washington, D.C. 20515
Telephone: (202) 225-9700
Douglas.Letter@mail.house.gov

September 29, 2022

**CERTIFICATE OF SERVICE**

I hereby certify that on September 29, 2022, I caused the foregoing document to be filed via the CM/ECF system for the U.S. District Court for the District of Arizona, which I understand caused a copy to be served on all registered parties.

*/s/ Douglas N. Letter*
Douglas N. Letter