Alexander Kolodin (SBN 030826)
Roger Strassburg (SBN 016314)
Veronica Lucero (SBN 030292)
Arno T. Naeckel (SBN 026158)
**Davillier Law Group, LLC**
4105 North 20th Street Suite 110
Phoenix, AZ 85016
602-730-2985
Email: akolodin@davillierlawgroup.com
rstrassburg@davillierlawgroup.com
vlucero@davillierlawgroup.com
anaeckel@davillierlawgroup.com
phxadmin@davillierlawgroup.com (file copies)

Laurin Mills (*pro hac vice*)
**Samek | Werther | Mills, LLC**
2000 Duke Street
Suite 300
Alexandria, VA 22314
703-547-4693
Email: laurin@samek-law.com

*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Dr. Michael P. Ward, D.O., *et al.*;<br>   *Plaintiffs*,<br>v.<br><br>Bennie G. Thompson, *et al.*;<br>   *Defendants*. | Case No. 3:22-cv-08015-DJH<br>**REPLY IN SUPPORT OF MOTION FOR INJUNCTION OR ADMINISTRATIVE INJUNCTION PENDING APPEAL** |

In this unprecedented case, a highly partisan "select committee" of Congress subpoenaed the telephone call data and text message records of the state chair of the rival political party for a period encompassing one of the most contentious political moments in American history.[1] Plaintiffs argued that the subpoena should be quashed because the disclosure of the subpoenaed information would have a chilling effect on the First Amendment associational rights of partisan political actors in Arizona, all of whom are certain to be queried by Congressional investigators about their conversations with Chairwoman Ward. This is not, as the Committee contends, speculation. It is a certainty.

---

[1] It is more than ironic that Committee Chair Bennie Thompson voted not to certify the delegation of Ohio electors lawfully sent to Congress by Ohio due to his concerns about the integrity of the presidential election results in Ohio in 2004. https://www.washingtonexaminer.com/opinion/what-bennie-thompson-did-on-jan-6-2005 (last accessed September 30, 2022).

Case 3:22-cv-08015-DJH   Document 65   Filed 10/02/22   Page 2 of 10

This was confirmed by the recent appearance of former Congressman Denver Riggleman on *60 Minutes* on September 25, 2022. There, Congressman Riggleman detailed his contact tracing activities on behalf of the Committee and showed a graphic that he created, called "The Monster [Fig 1]," which purportedly depicts the connections between certain partisan political actors and the White House.



*Figure 1*

Congressman Riggleman confirmed what Congressional investigators will do with the information they seek. "The thread that needs to be pulled identifying all the White House numbers and why we have certain specific people, why they were talking to the White House," he told 60 Minutes.[2] The precedent set here will be applied in the opposite direction if control of the House changes and Republicans initiate an investigation of those who challenged the legitimacy of the 2016 presidential election.

Chairwoman Ward and her husband are also practicing physicians. The disclosure of their telephone records is certain to reveal the identities of some of their patients (all of whom are being treated for weight loss issues) to the prying eyes of partisan congressional investigators. The Committee has no legitimate need for that information and its blunderbuss subpoena will cause those suffering from a sensitive medical condition to receive calls from investigators and erase any notion of patient privacy.

I.     **Defendants Misstate and Misapply the Applicable Standard.**

The Committee argues that courts apply the same factors for injunctions pending appeal that apply to ordinary injunctions. That is incorrect. The factors are more leniently worded and applied when a party seeks an injunction pending appeal.

---

[2] Areeba Shah, *"The Monster": Ex-Jan. 6 investigator sounds alarm over mysterious WH call — here's what we know*, SALON (available at: https://www.salon.com/2022/09/26/the-monster-ex-jan-6-investigator-sounds-alarm-over-mysterious-wh-call--heres-what-we-know/ (Sept. 26, 2022).

The "success on the merits factor cannot be rigidly applied [to a motion for injunction pending appeal] because[,] if it were, an injunction would seldom, if ever, be granted because the district court would have to conclude that it was probably incorrect in its determination on the merits." *Protect Our Water v. Flowers*, 377 F. Supp. 2d 882, 884 (E.D. Cal. 2004) (collecting cases) (cleaned up). The prong is satisfied, and an injunction pending appeal is usually appropriate, "where the trial court is charting a new and unexplored ground and the court determines that a novel interpretation of the law **may** succumb to appellate review." *Protect,* 377 F. Supp. 2d at 884) (emphasis added); *see also Republican Nat'l Comm. v. Pelosi*, 2022 U.S. Dist. LEXIS 91503, at *10 (D.D.C. May 20, 2022) (case presented "fair ground for litigation" on RNC's First Amendment claim sufficient to satisfy this prong for purposes of an administrative stay).

The irreparable injury prong is also satisfied differently when seeking an injunction pending appeal. It is sufficient to demonstrate irreparable harm where, as is the case here, failure to issue an injunction would deprive a party of a meaningful right to appeal. *Pelosi,* 2022 U.S. Dist. LEXIS at *11 (D.D.C. May 20, 2022).

The third factor is substantially different. Rather than balancing equities, a court looks to "whether the grant of a stay will substantially injure other interested parties[.]" Mot. 3:17-4:9 (citing various cases); *See also Doe v. Trump*, 944 F.3d 1222, 1225 (9th Cir. 2019). This factor merges with "public interest" prong when an injunction is sought against the government. (Doc. 63) (hereafter "Resp.") at 2.

The Ninth Circuit applies a "sliding scale" approach to preliminary injunctions, meaning that "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *Apache Stronghold v. United States*, No. 21-15295, 2021 U.S. App. LEXIS 6562, at *7 (9th Cir. Mar. 5, 2021). In applying this sliding scale, the first two elements are the most important. *Doe*, 944 F.3d at 1225-26. And, even in the D.C. Circuit, which has never recognized the "sliding scale", the district court in *Pelosi* entered an administrative injunction (as opposed

to stay pending appeal), despite the fact that only the "serious questions" and "irreparable harm" prongs tipped in the RNC's favor. *Pelosi* at *10 (D.D.C. May 20, 2022).

## II. The Appeal Raises Substantial and Difficult Questions of Law.

The Committee asserts that Plaintiffs fail to raise a "serious question" under the First Amendment and this case is unlike *Pelosi* because it involves individuals, not a political party. Resp. at 2-3. Citing *Warth v. Seldin*, 422 U.S. 490 (1975) and *NAACP v. Alabama*, 357 U.S. 449 (1958), the Committee seems to argue that Plaintiffs lack standing to make an associational First Amendment claim. Resp. at 3.

But Plaintiffs' standing was not questioned by the Court. Moreover, *Warth* concerned the standing of individuals to challenge zoning laws in a town where they did not reside. 422 U.S. at 503-07. It was not a case involving an unprecedented intrusion by a congressional committee into the contacts between the state opposition party chair and partisan political actors. The Chair of the Arizona GOP plainly has standing to assert and attempt to vindicate the associational rights of Republicans.

The Committee also argues that Plaintiffs' claims are "speculative." Resp. at 4. Not so. Congressman Riggleman's statements on *60 Minutes* leave no doubt as to what will happen if T-Mobile complies with the subpoena. The Committee will feed that information data visualization matrix called "The Monster." **Exh. A** (transcript of *60 Minutes* episode). That information will permit investigators to identify every person in contact with Chair Ward. Each person can then expect to be contacted by congressional investigators. A more chilling impact on public participation in politics can hardly be imagined than federal law enforcement asking questions about one's political activities.

The facts in this case are closely analogous to those in *Pelosi*. Both cases concern a subpoena from the Committee seeking data that would identify persons engaged in protected partisan political activity. As the district court in *Pelosi* stated, this case "presents a serious legal question" and "an issue of first impression" involving the application of *Ams. for Prosperity Foundation v. Bonta*, 141 S. Ct. 2373 (2021), "in the

context of" *AFL-CIO v. FEC*, 333 F.3d 168 (D.C. Cir. 2003). 2022 U.S. Dist. LEXIS 91503 at *9-10. The same is true here.

Defendants attempt to distinguish *Pelosi* and *NAACP v. Alabama* by arguing that the subpoena seeks only "call detail records." The production of call detail records will elicit the same kind of identifying information that the Supreme Court held infringed "the right of the members [of the NAACP] to pursue their lawful private interests . . . and to associate freely with others in so doing." *NAACP*, 357 U.S. at 466. Can anyone seriously argue that the result in *NAACP* would have been different had Alabama sought only the telephone numbers of local NAACP members when reverse-lookup directories make identifying the identity of telephone subscribers trivial?

*Pelosi* also did not involve important patient privacy interests. Dr. Ward's patients are being treated for weight loss issues. It is easy to imagine the humiliation they will experience when congressional investigators interrogate them about their discussions with Dr. Ward. This Court has the same power that it does in the grand jury subpoena context to quash or limit the scope of a subpoena that is unduly burdensome or oppressive. *United States v. Bergeson*, 425 F.3d 1221, 1226-27 (9th Cir. 2005). Whether that power could or should have been exercised here is an important and substantial question that is now for the Ninth Circuit to decide - it warrants a stay.

### III. Plaintiffs Will Suffer Irreparable Harm Absent an Injunction.

Plaintiffs will suffer irreparable harm if an injunction is not granted because T-Mobile will produce the subpoenaed information and Plaintiffs will have no meaningful right of appeal. The Committee simply ignores this argument and, instead, addresses points such as potential chilling effects and the potential for harassment and threats, which the Committee contends are based on pure speculation. Resp. 6. This fails to squarely address the irreparable harm inherent in being deprived of a meaningful right of appeal.

An identical argument for irreparable harm was made – *and accepted* – in *RNC v. Pelosi*. "The RNC has shown this form of irreparable harm because, absent an injunction pending appeal, Salesforce will comply with the subpoena. [] And once Salesforce does,

the Speech and Debate Clause prohibits this Court (or any other) from ordering the Select Committee to take any action with respect to the records that could provide any kind of 'effectual relief' to the RNC." Case no. 1-22-cv-00659-TJK, Slip. Op. at 8, ECF Doc. No. 42 (D.D.C. May 20, 2022). The same is true here. There is no serious argument that Plaintiffs will not be irreparably harmed if T-Mobile complies with the subpoena.

### IV. The Committee's Actions Demonstrate That It Has No Immediate Need for the Requested Information.

Plaintiffs showed that since the Committee issued its subpoena in January 2022, the Committee sought and was granted five requests for an extension to respond to Plaintiffs' Complaint and Motion to Quash. But for this Court's July 27, 2022 Order, this matter would still be awaiting briefing. Based on this course of conduct, the Committee cannot credibly contend that it has an immediate need for the information.

The Committee argues that its mission is important and of great public interest. That has nothing to do with whether the Committee has an *immediate* need for the information sought. In *Pelosi*, the Committee suddenly reversed course and abandoned the pretense that the Salesforce information was important after three D.C. Circuit judges opined that the issues in that case raised "important and unsettled constitutional questions." USCA Case 22-5123, Doc. #1964512 (D.C. Circuit Sept. 16, 2022). Thus, the fact the Committee argues something is important does not necessarily make it so.

The Committee contends that while its "investigative priorities have dictated its ligation focus over time," those shifting priorities have no bearing on whether the equities now favor Plaintiffs. Yes, they do. *Cooper v. Rimmer*, 379 F.3d 1029, 1032 (9th Cir. 2004) (appropriate to weigh "undue delay in the balance of equities[.]"). The Committee spent the first half of 2022 collecting documents and interviewing/deposing witnesses. It then aired eight professionally directed, prime-time televised hearings highlighting the Committee's findings. The Committee is certain to issue an "interim report" in October in advance of the mid-term elections. The Committee did all of this without exhibiting the slightest need to push for the T-Mobile records. This Court should also carefully examine

- 5 -

how, as of September 2nd, the Committee could claim that its work had "progressed" to the point where it "that it no longer ha[d] a need" for what it argues is far more substantial information subpoenaed from the RNC and yet now contend that it has a specific and urgent need for supposedly insignificant call record data from the Chair of the AZGOP. (Case #22-5123, Doc. #1962096) at pg. 3.

Equally important, what Dr. Ward and the other alternate Arizona electors did was hardly a secret. The information the Committee now seeks is strictly about disrupting the associational interests of partisan political actors.

Further, balancing the equities is not required. The question is whether Congress would be seriously harmed by an injunction. Congress may re-authorize the committee as often as it likes if it feels it has unfinished work after January 3. Conversely, Congress may terminate the Committee before January 3 if it so chooses. How Congress might exercise its powers is not an appropriate consideration for this Court. Further, given the facts set forth above, it strains credulity for the Committee to argue that it will be harmed by a stay.

V.     **The Public Interest Favors a Stay.**

Though this Court held that patient privacy concerns were insufficient to defeat the Subpoena, it nonetheless "encourage[d] the parties to engage in discussions regarding entry of a protective order designed to protect any potential PHI." (Doc. 55) pg. 18. It is in the public interest to allow the parties time to engage in such discussions prior to any potential disclosure. *Daniel Health CARE, Inc. v. Harden*, 2019 U.S. Dist. LEXIS 243312, at *3 (S.D. Miss. Oct. 8, 2019) ("[M]aintaining the confidentiality of citizens' private health information" serves the "public interest.").

"There is a strong public interest in upholding the requirements of the First Amendment. *Watkins v. United States*, 354 U.S. 178, 188 (1957) (holding that the constitutional rights of witnesses must be respected by the Congress . . . [and] the Bill of Rights is applicable to . . . congressional investigations"). And, "if a plaintiff demonstrates both a likelihood of success on the merits and irreparable injury, it almost always will be

the case that the public interest will favor the plaintiff." *Amalgamated Transit Union Local 85 v. Port Auth. of Allegheny Cty.*, 39 F.4th 95, 109 (3d Cir. 2022). Here, because the likelihood of success on the merits prong is satisfied by the showing that this case raises novel questions of law that may succumb to appellate review, this prong is satisfied.

Additionally, though this Court notes that, in 1988, the Ninth Circuit held that a fear of future reprisal was in some instances insufficient to trigger First Amendment protections, (Doc. 55 pg. 15), the validity of this rule is questionable in light of subsequent Supreme Court cases, especially *Citizens United*, wherein the Court held that a "reasonable probability" that compelled disclosure of donor identities would "subject them to threats, harassment, or reprisals from either Government officials or private parties" was adequate to support a First Amendment challenge. 558 U.S. 310, 367 (2010). As this Court noted, Plaintiffs have already been subject to significant harassment.

For these reasons, as well as those set forth previously in this brief, the public interest favors a stay. However, it should be noted that the District Court in *Pelosi* entered an administrative injunction despite finding that only the first two prongs tipped in the RNC's favor. If the Court does not grant an injunction pending appeal, it should at least grant an administrative injunction.

Respectfully submitted this 2nd day of October, 2022

/s/ *Alexander Kolodin*
Alexander Kolodin
Roger Strassburg
Veronica Lucero
Arno T. Naeckel
**Davillier Law Group, LLC**
4105 North 20th Street
Suite 110
Phoenix, AZ 85016

/s/ *Laurin Mills*

Laurin Mills
**SAMEK | WERTHER | MILLS, LLC**
2000 Duke Street
Suite 300
Alexandria, VA 22314
(*Pro hac vice*)

## CERTIFICATE OF SERVICE

I certify that on October 2, 2022, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing, which electronically sends a copy to be served on all registered parties.

*/s/ Alexander Kolodin*