**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Michael P Ward, et al.,

Plaintiffs,

v.

Bennie G Thompson, et al.,

Defendants.

No. CV-22-08015-PCT-DJH

**ORDER**

Plaintiffs Michael and Kelli Ward and Mole Medical Service PC ("Plaintiffs") sued to challenge a subpoena issued to Defendant T-Mobile by the U.S. House of Representatives Select Committee ("Select Committee") to investigate the January 6th attack on the United States Capitol. On September 22, 2022, the Court denied Plaintiffs' Motion to Quash and granted Chairman Bennie G. Thompson and the Select Committee's ("Congressional Defendants") Motion to Dismiss. (Doc. 55). Plaintiffs now move for an injunction pending appeal or, in the alternative, for an administrative injunction during which Plaintiffs can petition the Ninth Circuit for an injunction pending appeal. (Doc. 57). Congressional Defendants oppose Plaintiffs' Motion. (Doc. 63). The Court will deny both requests.

## I. Background

This case arises out of the Select Committee's investigation into the January 6, 2021, attack on the United States Capitol. In its prior Order, the Court dismissed Plaintiffs' claims against the Congressional Defendants because of their immunity from suit under

the doctrine of sovereign immunity. (Doc. 55 at 6).

On September 23, 2022, Plaintiffs filed a notice of appeal. (Doc. 56). Three days later, on September 26, 2022, Plaintiffs moved for an injunction pending appeal or, in the alternative, an administrative injunction "to allow Plaintiffs sufficient time to seek an emergency injunction in the Ninth Circuit." (Doc. 57 at 2). T-Mobile takes no position on the Motion. (Doc. 66). Congressional Defendants oppose both requests for relief. (Doc. 63 at 2).

On October 4, 2022, the Court held oral arguments on the matter. (Doc. 66). During arguments the Congressional Defendants confirmed that they are no longer seeking Dr. Michael Ward's records or Plaintiffs' patient phone numbers. (*Id.*)

## II. Legal Standard

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Such a "drastic remedy . . . should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (quotation omitted).

Where, as here, a plaintiff seeks an injunction pending appeal, this court applies the test for preliminary injunctions. *Se. Alaska Conservation Council v. U.S. Army Corps of Eng'rs*, 472 F.3d 1097, 1100 (9th Cir. 2006). To obtain a preliminary injunction, a plaintiff must show: (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm if injunctive relief is denied, (3) that the balance of equities weighs in the plaintiff's favor, and (4) that the public interest favors injunctive relief. *Winter*, 555 U.S. at 20. The movant carries the burden of proof on each element of the test. *See Los Angeles Memorial Coliseum Comm'n v. National Football League*, 634 F.2d 1197, 1203 (9th Cir. 1980). The last two factors merge when the government is a party. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014).

The Ninth Circuit has adopted a "sliding scale approach under which a preliminary injunction could issue where the likelihood of success is such that 'serious questions going to the merits were raised and the balance of hardships tips sharply in [plaintiff's] favor.'"

*All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011) (quoting *Clear Channel Outdoor, Inc. v. City of Los Angeles*, 340 F.3d 810, 813 (9th Cir. 2003)). This approach survives the four-element test set forth in *Winter* when applied as part of that test. *Id.* at 1131–32.

**III. Discussion**

The Court begins with Plaintiffs' request for a preliminary injunction and then considers Plaintiffs' request for an administrative injunction.

**1. Preliminary Injunction Pending Appeal**

Because it is dispositive, the Court will first address the second element of the preliminary injunction test: whether Plaintiffs have established a likelihood of irreparable harm in the absence of a preliminary injunction. *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) (finding that speculative allegations of harm cannot constitute irreparable harm and "a plaintiff must *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief").

**A. Irreparable Harm**

Plaintiffs argue that unless this Court issues an injunction that prohibits enforcement of the subpoena, T-Mobile will have no choice but to comply. (Doc. 57 at 9). Once the Select Committee obtains the phone records, Plaintiffs contend, "[t]he proverbial toothpaste will all be out of the tube, and there will be no way for any court to undo the disclosure of political contacts and patient telephone numbers." (*Id.*) Specifically, Plaintiffs argue that disclosure of Ms. Ward's political contacts will chill them from communicating with her in the future, and that "law enforcement agents are going to contact every number on that list and query each subscriber as to what they were discussing with Dr. Kelli Ward, the Chair of the Arizona Republican Party." (*Id.* at 2). Plaintiffs also contend that disclosure of Ms. Ward's patient numbers will disclose their identities and, because she only provides one type of treatment, will reveal the patients' sought treatment. (*Id.* at 3). Plaintiffs also note the Constitution's Speech or Debate Clause immunizes the Select Committee and thus the Court would be powerless to order the Select Committee to

return the records. (*Id.* at 10).

For the following reasons, the Court finds these contentions do not constitute the showing of irreparable harm required for the extraordinary relief of a preliminary injunction.

First, as to Plaintiffs' concerns regarding disclosure of patient numbers, the Court has already found that neither the Arizona physician-patient privilege nor the Health Insurance Portability and Accountability Act apply to bar disclosure of the records sought. (Doc. 55 at 14–18). Moreover, the Select Committee clarified at the hearing that it does not seek any of Plaintiffs' patient telephone numbers, thus assuaging any concerns Plaintiffs have asserted regarding their disclosure. (Doc. 66). Second, as to Plaintiffs' concern that disclosure of Ms. Wards' political contacts will chill Republican members' interests in communicating with their Chair, the Court finds this alleged concern speculative—and in light of disclosures made during oral argument—dubious. Indeed, during argument, Plaintiffs' counsel pointed out that Ms. Ward had written a book[1] about how she participated in sending an alternate slate of electors to Washington and filmed videos of this participation and posted them to YouTube. These actions belie Ms. Ward's concern that her communications with her constituents or colleagues will be chilled by T-Mobile's possible disclosure of a record showing Ms. Ward called or received calls from persons during this time.

In sum, the Court finds Plaintiff Wards' claim that she does not want to disclose the identities of her political contacts for fear of chilling her constituents' future communication with her falls short of stating the concrete, irreparable injury warranted for a preliminary injunction.[2] (Doc. 66). *See also Caribbean Marine Servs. Co.*, 844 F.2d at

---

[1] The Court may take judicial notice of matters that are either "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). *See* https://www.amazon.com/Justified-Americas-Dr-Kelli-Ward/dp/195725503X

[2] The Court notes that Plaintiffs raised the associational rights of the Arizona GOP for the first time during oral argument. (Doc. 66). Nowhere in Plaintiffs' Complaint, however, did Plaintiffs allege a claim on behalf of the Arizona GOP. The Complaint alleges they "have been injured by this retaliation against *their* First Amendment protected interests . . . ." (Doc. 1 at ¶ 59) (emphasis added). Not only is this argument untimely, but Plaintiffs

674 ("[s]peculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction."). Ms. Ward's own actions undermine her concern that disclosure of these numbers will chill political communications. The burden is on Plaintiffs to make a clear showing of an immediate threatened injury, and Plaintiffs have not done so here. *Lopez v*, 680 F.3d at 1072.

Because irreparable harm is a prerequisite to injunctive relief, and Plaintiffs cannot make the showing, Plaintiffs have not satisfied the second element of the *Winter* test. Plaintiffs are therefore not entitled to an injunction pending appeal. *Protecting Arizona's Res. & Child. v. Fed. Highway Admin.*, 2016 WL 9080879, at *2 (D. Ariz. Oct. 26, 2016).

**B. Sliding Scale**

The Ninth Circuit's more flexible sliding scale approach does not alter the Court's conclusion. Plaintiffs argue their appeal raises serious legal questions concerning their associational rights under the First Amendment. (Doc. 57 at 5). They say the "exacting scrutiny" standard, which requires that there be "a substantial relation between the disclosure requirement and a sufficiently important governmental interest, and that the disclosure be narrowly tailored to the interest it promotes," is an unsettled area of the law and thus raises a serious question. (*Id.* at 6). But as discussed below, the Court did not even reach application of this standard because the Court found Defendants immune from such a claim and any alleged constitutional violation too speculative to find a waiver of such immunity.

After consideration of the parties' arguments and in light of its previous Order (Doc. 55), the Court finds Plaintiffs have not presented a serious legal question regarding the merits of Plaintiffs' First Amendment claim. Although Plaintiffs discuss at length the application of the exacting scrutiny standard in their briefing and how this case mirrors *Republican National Committee v. Pelosi*, the Court already found Plaintiffs failed to raise a viable First Amendment claim because of the speculative nature of their alleged harm.[3]

---

have not heretofore assessed whether they have standing to allege the associational injury.

[3] Moreover, during arguments, Plaintiffs acknowledged the factual distinction of the records sought in *Pelosi*, and those sought here.

(Doc. 55 at 14). Indeed, the Court noted that Plaintiffs "provided no evidence to support their contention that producing the phone numbers associated with this account will chill the associational rights of Plaintiffs or the Arizona GOP" and that "'absent objective and articulable facts' otherwise, the Court finds Plaintiffs' arguments constitute 'a subjective fear of future reprisal' that the Ninth Circuit has held as insufficient to show an infringement of associational rights." (Doc. 55 at 13). *See also Brock v. Loc. 375, Plumbers Int'l Union of Am., AFL-CIO*, 860 F.2d 346, 350 (9th Cir. 1988). Because Plaintiffs failed to "demonstrate how the Select Committee's enforcement of the subpoena and subsequent possession of the phone numbers [would] have a deterrent effect on the exercise of protected activities," the Court found Plaintiffs "failed to demonstrate a cognizable First Amendment claim" and thus did not even reach the issue of whether exacting scrutiny applied here. (*Id.* at 14). *See also Perry v. Schwarzenegger*, 591 F.3d 1147, 1162 (9th Cir. 2010).

In addition, Plaintiffs have not demonstrated that the balance of hardships tips sharply in their favor. To the contrary, "there is a strong public interest in Congress carrying out its lawful investigations" and "[t]he public interest is heightened when, as here, the legislature is proceeding with urgency to prevent violent attacks on the federal government and disruptions to the peaceful transfer of power." *Trump v. Thompson*, 20 F.4th 10, 48 (D.C. Cir. 2021), *cert. denied*, 142 S. Ct. 1350 (2022). Last, the Select Committee is authorized through the end of the current Congress, which is set to conclude on January 3, 2023. An injunction would thus make it impossible for the Select Committee to obtain the subpoenaed records because the Ninth Circuit briefing deadline is not until January 2023. Time Schedule Order at 3, Michael Ward, et al v. Bennie Thompson, et al, No. 22-16473 (9th Cir. Sept. 26, 2022), ECF 1. Thus, even under the more flexible sliding scale approach, the Court finds that Plaintiffs have not met their burden to show the balance of hardships tips sharply in their favor. *All. for the Wild Rockies*, 632 F.3d at 1131. Having failed to make such a showing, and given the Court's determination that Plaintiffs failed to make a clear showing of an immediate threatened injury, Plaintiffs' motion for an

injunction pending appeal will be denied.

**2. Administrative Injunction Pending Appeal**

In addition to their request for a preliminary injunction, Plaintiffs seek, in the alternative, an administrative injunction pending appeal. (Doc. 57 at 2). During oral arguments, the Court specifically inquired about the relevant legal standards regarding an administrative injunction pending appeal and a preliminary injunction pending appeal. (Doc. 66). Both parties skirted the Court's direct query and instead focused only on the preliminary injunction standard. (*Id.*)

The Ninth Circuit has "definitively resolved which standard applies to administrative stay motions." *Nat'l Urban League v. Ross*, 977 F.3d 698, 702 (9th Cir. 2020) (citing *Doe #1 v. Trump*, 944 F.3d 1222, 1223 (9th Cir. 2019). "When considering the request for an administrative stay, our touchstone is the need to preserve the status quo." *Id.* In other words, an administrative stay "is only intended to preserve the status quo until the substantive motion for a stay pending appeal can be considered on the merits, and does not constitute in any way a decision as to the merits of the motion for stay pending appeal." *Doe #1*, 944 F.3d at 1223.

During the hearing, neither party addressed how the status quo would be affected if the phone records were released. (Doc. 66). Based on the parties briefing and oral argument record, the Court finds the status quo has shifted since the inception of this case. The Congressional Defendants no longer seek Dr. Michael Ward's or his children's phone records and counsel for the Select Committee clarified at the hearing it does not seek Ms. Ward's patient phone numbers. (Doc. 55 at 3 n.4; Doc. 66). To this end, the Court finds the Congressional Defendants have substantially narrowed the subpoena since its initial issuance, and thus shifted the analysis of what is in fact the "status quo."

Notwithstanding the narrow scope of the current information now sought, Plaintiffs still argue that if the records are produced by T-Mobile, their First Amendment associational rights will be chilled, and this is a harm that cannot be remedied. (Doc. 63 at 7). As noted, the Court finds this alleged concern to be speculative and dubious,

particularly in light of Ms. Ward's book and her YouTube video, which presumably publicized many of the identities of the political contacts she communicated with during that time. (Doc. 66). At the very least, this self-publication does not evidence a true concern for her contacts' privacy. The Court is mindful that the Congressional Defendants have extended the phone records production date numerous times, which does raise questions about their immediate need for these records. (Docs. 26, 31, 33, 37, 39, 43, 50). But given the breadth of the Select Committee's investigation and the numerous parties involved, the Court finds these extensions do not negate the overall need for the phone records. This is particularly true because the Select Committee is only authorized until the end of the current Congress, which concludes on January 3, 2023. (Doc. 66). For these reasons, and because the status quo has been substantially altered by the parties' respective conduct, the Court cannot find an administrative injunction is warranted here. *Nat'l Urban League*, 977 F.3d at 702. Accordingly, the Court will deny Plaintiffs' request for an administrative injunction.

## IV. Conclusion

For these reasons, the Court denies Plaintiffs' Motion for an injunction pending appeal and denies Plaintiffs' request for an administrative injunction.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for Injunction or Administrative Injunction Pending Appeal (Doc. 57) is **denied**.

Dated this 7th day of October, 2022.

Honorable Diane J. Humetewa
United States District Judge